724 F.Supp. 1028 (1989)
Raymond T. BONNER, Plaintiff,
v.
UNITED STATES DEPARTMENT OF STATE, Defendant.
Civ. A. No. 86-769.
United States District Court, District of Columbia.
November 2, 1989.
*1029 William Lee Webber, Howrey & Simon, Washington, D.C., for plaintiff.
Joseph V. Jest, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

MEMORANDUM OPINION
JOHN H. PRATT, District Judge.

I. Introduction

Plaintiff Raymond T. Bonner brings this action under the Freedom of Information Act, 5 U.S.C. § 552 (1988) ("FOIA" or the "Act"), seeking the release from defendant United States Department of State ("State Department") of documents related to United States foreign policy in the Philippines.[1] Before the Court are the parties' cross-motions for partial summary judgment.
The motions concern sixty-three items selected by Bonner as forming a representative sample for a Vaughn index.[2] The State Department served Bonner with the Vaughn index on February 1, 1988. At the same time, however, it released documents covered by nineteen of the sixty-three items. Therefore, the Vaughn index described only forty-four items.[3]
Plaintiff seeks a declaration that the State Department's release, rather than description, of documents covered by these nineteen items was improper. He also challenges the State Department's rationales for withholding documents falling under thirty-one items described in the Vaughn index, and asks the Court to order their release.
The State Department has moved for summary judgment as to all sixty-three items. Plaintiff opposes the State Department's motion only insofar as it concerns documents that are covered by plaintiff's motion. The matter has been extensively briefed. At the outset, then, we conclude that the State Department is entitled to summary judgment with respect to all documents not addressed by plaintiff's motion.

II. The Nineteen Released Items

We also may quickly dispose of plaintiff's claim that the State Department improperly failed to describe the nineteen *1030 released items. The gist of plaintiff's complaint is that by releasing these documents, and particularly without describing them, the State Department has destroyed the representativeness of the sample and thereby defeated the purpose of a Vaughn index. Plaintiff also contends that the release, without description, evidences the State Department's arbitrariness and bad faith in evaluating plaintiff's FOIA requests.[4]
Plaintiff offers no evidence that the sample's representativeness has been destroyed. He relies on his own ipse dixit conclusion. Moreover, the State Department correctly points out that the newly released information, "like virtually all of the information excised from the remaining 44 items, ... related to the military bases question and other sensitive issues in U.S.-Philippine affairs and was originally withheld under Exemption 1" of FOIA. Defendant's Reply Memorandum at 4. In light of these factors, we cannot conclude that the release of these documents destroyed the representativeness of the sample.
Nor does release of the nineteen items evidence agency arbitrariness or bad faith. It appears that upon re-review, the State Department made a reasoned determination that these documents could safely be released.[5] Since the State Department carefully re-reviewed all sixty-three items selected by plaintiff, there is no reason to assume that it reached its decision as to nineteen of them arbitrarily. Nor does the mere release of information that was once classified indicate that other information that remains classified also should be released. In light of the Eaves Declaration, discussed more fully below, the Court is unable to concur with plaintiff's "suspicions" concerning the effect the passage of time may have had on other documents the State Department continues to withhold. Accordingly, with respect to these nineteen items, plaintiff's motion is denied and the State Department's motion is granted. We now turn to the items described in the Vaughn index.

III. The Vaughn Index Items[6]
Exemption 1 of FOIA protects from disclosure matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). All of the withheld information challenged by plaintiff has been classified pursuant to Executive Order No. 12,356, 47 Fed.Reg. 14,874 (1982).[7] That *1031 Order authorizes the classification of information that, if disclosed, "reasonably could be expected to cause damage to the national security." Exec. Order No. 12,356 § 1.3(b), 47 Fed.Reg. 14,876. "National security" is defined as "the national defense or foreign relations of the United States." Id. § 6.1(e), 47 Fed.Reg. 14,883.
This Court must determine de novo whether the State Department properly withheld the information pursuant to Exemption 1. 5 U.S.C. § 552(a)(4)(B). While the State Department bears the burden of sustaining its claim,[8] we must accord "substantial weight" to its determinations.[9]See Goldberg v. United States Department of State, 818 F.2d 71, 78 (D.C.Cir. 1987); Abbotts v. Nuclear Regulatory Commission, 766 F.2d 604, 606 (D.C.Cir. 1985); Gardels v. CIA, 689 F.2d 1100, 1104 (D.C.Cir.1982); Lesar v. United States Department of Justice, 636 F.2d 472, 481 (D.C.Cir.1980); Halperin v. CIA, 629 F.2d 144, 147-48 (D.C.Cir.1980). Specifically, we must grant summary judgment to the State Department "if its affidavits `describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption,' and `are not controverted by ... contrary evidence in the record'" or "`evidence of agency bad faith.'" Abbotts, 766 F.2d at 606 (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir.1981)); see also Goldberg, 818 F.2d at 77-78; Gardels, 689 F.2d at 1104-05; Halperin, 629 F.2d at 148.
The information plaintiff seeks has been identified as concerning either foreign government information, foreign relations or foreign activities of the United States, or a confidential source. See Exec. Order No. 12,356 § 1.3(a)(3), (5), (9), 47 Fed.Reg. 14,876. Section 1.3(b) of Executive Order 12,356 provides that such information "shall be classified when ... its unauthorized disclosure, either by itself or in the context of other information, reasonably could be expected to cause damage to the national security." Id. § 1.3(b), 47 Fed.Reg. 14,876. Many of the withheld documents concern United States military bases in the Philippines. Others contain biographic information on foreign officials, confidential assessments of various economic and political situations in the Philippines and elsewhere, and information provided to United States officials in confidence by a foreign source.
The State Department's Eaves Declaration[10] is one hundred and forty-three (143) pages in length and describes in excruciating detail: how and at what level each of the withheld documents covered by the Vaughn index and challenged by plaintiff was classified;[11] its sender and recipient; the source of the information it contains; and why partial release was or was not possible. For each item, the Eaves Declaration explains why disclosure of the information is reasonably likely to cause damage, and in some cases serious damage, to the national security.[12]
*1032 We have examined the State Department's rationales and find that they satisfy this Circuit's standard for summary judgment.[13] The Eaves Declaration describes the reasons for nondisclosure with at least as much specificity and logic as agencies have in numerous other cases upholding continued classification. See, e.g., Goldberg, 818 F.2d at 78 n. 7 ("Although the Eaves affidavit might have been more complete ..., it certainly does an adequate job of justifying the current classification of the document excerpts. The affidavit demonstrates a careful, document-by-document and answer-by-answer review."); Halperin, 629 F.2d at 147-48; American Jewish Congress v. Department of the Treasury, 549 F.Supp. 1270, 1277-78 (D.D. C.1982) (Disclosure would indicate that the United States was "unable or unwilling to maintain its commitments and uphold the usual standards of international practice with respect to ... confidentiality."), aff'd without opinion, 713 F.2d 864, cert. denied, 464 U.S. 895, 104 S.Ct. 244, 78 L.Ed.2d 233 (1983); Fulbright & Jaworski v. Department of the Treasury, 545 F.Supp. 615, 619 (D.D.C.1982) (Release of document concerning past treaty negotiations probably would undermine the government's ability to achieve desired results in future treaty negotiations "because the document so clearly sets forth the U.S. goals, rationales and past experiences."). We are persuaded that the Eaves Declaration provides "ample evidence to show the plausibility of the alleged potential harm, in a manner that is reasonably detailed rather than conclusory." Halperin, 629 F.2d at 148. This Court declines to "conduct a detailed inquiry to decide whether it agrees with the agency's opinions," for we "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." Id.
The record is devoid of any contrary evidence or evidence of agency bad faith.[14] As enunciated in Goldberg, "contrary evidence must somehow undermine or call into question the correctness of the classification status of the withheld information, or the agency's explanation for the classification." Goldberg, 818 F.2d at 81. Plaintiff merely disagrees with the conclusions *1033 reached by the State Department as to the risk of damage to national security that would result from disclosure.[15] While requesters of information under FOIA may be expected to disagree with agency rationales for withholding certain information, plaintiff simply has not shown the type of contrary evidence Goldberg requires. Moreover, we find no evidence of agency bad faith. As discussed above, we disagree with plaintiff's assertion that the State Department's release of nineteen items manifests arbitrariness or bad faith.

IV. Conclusion

Based on the foregoing, the Court concludes:
1) that under the circumstances of this case, the State Department properly released nineteen items instead of describing them in the Vaughn index, and that such release did not destroy the representativeness of the sample or evidence arbitrariness or bad faith; and
2) that the State Department has sustained its burden of justifying its decision to withhold the challenged information described in the Vaughn index under Exemption 1 of FOIA and plaintiff has failed to demonstrate contrary evidence or evidence of agency bad faith.
Accordingly, the State Department's motion for partial summary judgment must be granted and plaintiff's motion for partial summary judgment must be denied. An Order consistent with this Memorandum Opinion has been entered this day.
NOTES
[1] Bonner, an author, originally sought the release of these documents for use in writing a book about U.S. foreign policy and former Philippine President Marcos and his wife. Bonner's book was published in May 1987, but Bonner continues to seek release of the documents both for possible use in future writings and to make the documents available to other authors through the National Security Archive.
[2] The State Department is currently withholding, in whole or in part, approximately 1,800 documents that are responsive to Bonner's FOIA requests. The parties agreed to proceed with a Vaughn index in order to spare themselves and this Court the burden of a litigation encompassing all of the withheld documents. The Court is appreciative and commends counsel for this sensible accommodation.
[3] The State Department released Items 1, 2, 3, 8, 13, 14, 16, 17, 18, 19, 20, 26, 28, 30, 41, 42, 43, 46, and 56.
[4] The State Department "determined that due to the change of circumstances and the passage of time," these documents "could now be released in their entirety." Eaves Declaration at 2. According to plaintiff, this rationale raises questions as to whether other documents, despite the passage of time, properly continue to be withheld.

Plaintiff also claims that some of the released information never should have been classified because it never could have posed a realistic threat to the national security. Plaintiff apparently would have this Court undertake an examination of priorly withheld, but now released, information to determine whether it ever had been properly withheld. This we decline to do. Once the information has been released, a court has no role to play. Cf. Tijerina v. Walters, 821 F.2d 789, 799 (D.C.Cir.1987); Crooker v. U.S. State Department, 628 F.2d 9, 10 (D.C.Cir.1980).
[5] Indeed, the State Department argues that it had no choice but to release the documents. It points out that unless information may properly be withheld under one of the nine FOIA exemptions, the Act requires its release. See 5 U.S.C. § 552(b), (d).
[6] The Vaughn index is comprised of three separate declarations, i.e., those of John Eaves (State Department), Cecil W. Fry (Air Force), and Kathryn I. Dyer (Central Intelligence Agency). The declarations of the latter two relate only to two documents.
[7] Many of the documents originally were classified under previous executive orders, but an agency may review prior classifications and reclassify material under the current executive order when it receives a FOIA request. See Goldberg v. United States Dep't of State, 818 F.2d 71, 77 (D.C.Cir.1987); Lesar v. United States Dep't of Justice, 636 F.2d 472, 480 (D.C.Cir.1980); Branch v. FBI, 700 F.Supp. 47, 48 (D.D.C.1988). Thus, the standards to be applied by this Court in reviewing the State Department's determinations are those that govern classification in Executive Order No. 12,356. See Lesar, 636 F.2d at 480.

Executive Order No. 12,356 delineates both procedural and substantive criteria that must be satisfied in order for classification to be effective. See Exec. Order No. 12,356 pt. 1, 47 Fed. Reg. 14,874-78. Plaintiff does not dispute that the State Department has complied with the procedural criteria, but challenges the substantive merit of the classification decisions.
[8] 5 U.S.C. § 552(a)(4)(B); see also Abbotts v. Nuclear Regulatory Comm'n, 766 F.2d 604, 606 (D.C.Cir.1985); Miller v. Casey, 730 F.2d 773, 776 (D.C.Cir.1984).
[9] Our deference stems from the fact that executive departments responsible for national defense and foreign policy matters have unique insights into the potential adverse effects of public disclosure of certain information. See, e.g., Goldberg, 818 F.2d at 78.
[10] John Eaves is an Acting Deputy Director of the Office of Mandatory Review of the Classification and Declassification Center of the State Department. He personally reviewed the portions of documents withheld from release.
[11] The withheld information has been classified as either secret or confidential. Information is classified as secret when its "unauthorized disclosure ... reasonably could be expected to cause serious damage to the national security." Exec. Order No. 12,356 § 1.1(a)(2), 47 Fed.Reg. 14,875. Information is classified as confidential when its "unauthorized disclosure ... reasonably could be expected to cause damage to the national security." Id. § 1.1(a)(3), 47 Fed.Reg. 14,875.
[12] Specifically, it states that disclosure might impair the future ability of the United States to achieve foreign policy objectives in the Philippines and elsewhere. Taking information concerning U.S. military bases as an example, the Eaves Declaration states that the presence of these bases in the Philippines "is the subject of recurring, essentially open-ended negotiations," and that "[i]n view of the importance of these bases in U.S. defense and security arrangements, it is vitally necessary to guard against the disclosure of U.S. negotiating strategy to avoid disadvantaging U.S. Government representatives in critical future negotiations." Eaves Declaration at 3.

The State Department also makes the quite persuasive point that disclosure of much of the information at issue would be considered a breach of "internationally-expected standards of discretion in the conduct of foreign relations." Such a breach may be expected to impair the national security in a number of ways, such as discouraging foreign "officials and other influential persons from working closely and cooperatively with U.S. officials, including furnishing information" of great concern to our government. See generally Eaves Declaration. For example, it is perfectly logical to expect that disclosure of information conveyed in confidence by a foreign contact would make future sources of information wary of sharing information with U.S. officials. Likewise, disclosure of sensitive portions of U.S. officials' assessments of certain political and economic situations in other countries might well offend officials in that particular country as well as elsewhere. Such offense is reasonably likely to impair United States foreign relations.
[13] While mindful that conclusory and generalized allegations of exemptions are not acceptable, Goldberg, 818 F.2d at 78, we also "must take into account ... that any affidavit ... of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual past harm." Halperin, 629 F.2d at 149. The only question this Court must ask is "whether the predicated danger is a reasonable expectation; and it is precisely on this point that [we], lacking expertise in the substantive matters at hand, must give substantial weight to agency statements...." Id.
[14] We note that there is a presumption that disclosure of foreign government information or information that concerns a confidential foreign source would cause damage to the national security. Exec. Order No. 12,356 § 1.3(c), 47 Fed.Reg. 14,876. To overcome this presumption, plaintiff must produce "sufficient prima facie evidence of non damage." See Carlisle Tire & Rubber Co. v. United States Customs Serv., 663 F.2d 210, 218 (D.C.Cir.1980) (interpreting preceding executive order with virtually identical language). This he has utterly failed to do.
[15] For example, plaintiff claims that much of the withheld information should be released because it is old. It is clear, however, that this factor alone is insufficient to require release. "`Congress has not established a time limitation for [Exemption 1] and it would be both impractical and inappropriate for the Court to do so....'" Keys v. United States Dep't of Justice, 830 F.2d 337, 346 (D.C.Cir.1987) (discussing FOIA Exemption 7(D)) (citation omitted). Moreover, the fact that the State Department has released a substantial amount of information "due to the passage of time" undercuts plaintiff's argument. There simply is no reason for us to assume that the State Department properly released certain information but wrongfully continues to withhold other information simply because both the released and the withheld information are old. We take judicial notice of the fact that Marcos, while deceased, is still a volatile issue in the Philippines, as recent events demonstrate.