Raymond T. BONNER, Appellant,

v.

**UNITED STATES DEPARTMENT OF STATE.**

No. 90–5111.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 12, 1991.

Decided March 26, 1991.

Emilio W. Cividanes, with whom David W. Danner, Ronald L. Plesser, and Sheryl L. Walter, Washington, D.C., were on the brief, for appellant.

Edward R. Cohen, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, were on the brief, for appellee. E. Roy Hawkens, Atty., Dept. of Justice, Washington, D.C., entered an appearance for appellee.

Before RUTH BADER GINSBURG, D. H. GINSBURG and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This appeal concerns the use of representative sampling in Freedom of Information Act ("FOIA") cases to determine the validity of an agency's FOIA exemption claims. We consider, in particular, the effect on representative sampling when an agency releases some of the sample documents without excisions, instead of justifying their continued redaction. We hold that, in order to maintain the representativeness of the sample, a district court must determine whether the released material was properly withheld when initially reviewed by the agency.

## I.

Raymond Bonner, an author and a journalist, filed approximately 86 FOIA requests in 1984 and 1985 seeking documents from the United States Department of State regarding U.S.–Philippines relations.[1] Dissatisfied with the pace at which the State Department was processing his requests, Bonner commenced this civil action in March 1986. After negotiations, Bonner agreed to reduce the scope of his requests and the State Department agreed to expedite its processing. Eventually, the Department identified 4,641 documents as responsive to Bonner's requests. By July 1987, 2,827 of these documents were released in full, 1,033 were released with portions redacted, and 743 were completely withheld.

With 1,776 documents still in dispute, the State Department and Bonner agreed, in September 1987, to test State's FOIA exemption claims through a sampling procedure. Under the agreement, Bonner would choose 63 documents from the partially redacted group of 1,033 documents, and the State Department would prepare a "*Vaughn* index," summarily describing the withheld information and presenting State's justification for each deletion. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).[2] In addition, the State Department would prepare a less detailed descriptive index of the 743 fully withheld documents, identifying each document by author, recipient, date, type (*e.g.*, telegram, memorandum), subject matter, number of pages, and any brief title used internally by State (*e.g.*, cable numbers). The terms of this agreement were set out in a district court order. *See Bonner v. United States Dep't of State*, No. 86–0769 (D.D.C. Sept. 15, 1987) (Stipulation and Order), *reproduced in* Joint Appendix ("J.A.") at 11.

A few months later, the State Department furnished Bonner with the Department's *Vaughn* index.[3] The index, however, covered only 44 of the 63 sample documents. In the course of preparing the *Vaughn* index in late 1987, the State Department determined that 19 of the documents could be released in full "due to the change of circumstances and the passage of time." *See* Declaration of John Eaves, December 9, 1987, at 2, J.A. at 22. Without referring to the originally redacted contents of these 19 documents, and then ac-

---

1. Bonner sought these documents for use in preparing a book, WALTZING WITH A DICTATOR: THE MARCOSES AND THE MAKING OF AMERICAN POLICY. The first edition was published in May 1987. Bonner pursues this litigation to obtain information for further writings on the Philippines.

2. A *Vaughn* index is an affidavit, or set of affidavits, that describes the withheld information and sets forth the justification for nondisclosure in reasonably specific detail. *See, e.g., National Treasury Employees Union v. United States Customs Service*, 802 F.2d 525, 527 (D.C.Cir.1986).

3. The principal component of the *Vaughn* index was a 143–page declaration by John Eaves, Acting Deputy Director of the Office of Mandatory Review and of the Classification and Declassification Center of the Department of State. The Eaves Declaration covered 42 of the documents. Declarations by Cecil W. Fry (Air Force), and Kathryn I. Dyer (Central Intelligence Agency), covering one document each, completed the index.

counting for the initial withholdings, the State Department simply released the documents in full to Bonner.[4]

In February 1988, Bonner and the State Department filed cross-motions for partial summary judgment regarding the sample documents. Along with his motion, Bonner submitted the *Vaughn* index covering the 44 redacted documents, the texts of all 63 sample documents as originally redacted, and the full texts of the 19 documents as newly released. The redacted texts of the 63 sample documents contained marginal notations at the point of the redaction citing the State Department's authority under FOIA, 5 U.S.C. § 552(b), and Executive Order No. 12,356, 47 Fed.Reg. 14,874 (1982), for the excisions.

In his motion for partial summary judgment,[5] Bonner argued that the State Department's full release of the 19 documents, without accounting for the excisions originally made, destroyed the representativeness of the sample. Bonner also argued that the Department's late release of the 19 documents, and its exclusion of them from the *Vaughn* index, evidenced the Department's arbitrariness and bad faith in evaluating Bonner's FOIA requests. Finally, Bonner challenged the national security exemptions asserted by the State Department for the excisions in 31 of the 44 redacted documents.[6]

The district court granted the Department's partial summary judgment motion and denied Bonner's. *See Bonner v. United States Dep't of State*, 724 F.Supp. 1028 (D.D.C.1989). Bonner had "offer[ed] no evidence that the sample's representativeness ha[d] been destroyed," the district judge stated. *Id.* at 1030. The judge noted in this context that Bonner sought district court determination whether the newly released information in the 19 documents had been properly withheld when the State Department first turned over information in response to Bonner's FOIA requests. Declining to undertake such a document-by-document examination, the district judge declared: "Once the information has been released, a court has no role to play." *Id.* at 1030 n. 4 (citing *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C.Cir.1987) and *Crooker v. United States State Dep't*, 628 F.2d 9, 10 (D.C.Cir.1980)). The district court further found that the release of the 19 documents was the result of "a reasoned determination that these documents could safely be released" and did not "evidence agency arbitrariness or bad faith." *Id.* at 1030.

**4.** The 19 documents were initially reviewed by the State Department between August 1985 and December 1986. *See* Brief for Appellant at 6 n. 8. The State Department also released portions of 9 other documents from the sample of 63. *Id.* at 6. Our disposition regarding the 19 fully released documents applies as well to the released parts of these 9 documents.

**5.** Although the State Department withheld material under several FOIA Exemptions, Bonner's motion for partial summary judgment challenged only excisions made pursuant to Exemption 1, the "national security" exemption. *See* Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 6.

**6.** Freedom of Information Act Exemption 1 (national security), 5 U.S.C. § 552(b)(1), reads:
(b) This section does not apply to matters that are—
(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]
The Executive order in effect at all times during this litigation reads in pertinent part:

Sec. 1.3 Classification Categories
(a) Information shall be considered for classification if it concerns:

. . . . .

(3) foreign government information;

. . . . .

(5) foreign relations or foreign activities of the United States;

. . . . .

(9) a confidential source[.]

. . . . .

(b) Information that is determined to concern one or more of the categories in Section 1.3(a) shall be classified when . . . its unauthorized disclosure, either by itself or in the context of other information, reasonably could be expected to cause damage to the national security.
(c) Unauthorized disclosure of foreign government information, the identity of a confidential foreign source, or intelligence sources or methods is presumed to cause damage to the national security.
Exec. Order No. 12,356, 47 Fed.Reg. 14,874, 14,-876 (1982).

With regard to the 44 documents covered by the *Vaughn* index, the district court concluded that the State Department had adequately justified its national security exemption claims, 5 U.S.C. § 552(b)(1). *See id.* at 1033. Bonner does not now take issue with that determination, nor does he further press his charge of agency bad faith.

In the months following the partial summary judgment, the parties conducted settlement negotiations that proved fruitless. Bonner then filed a series of discovery requests seeking additional information on the 743 fully withheld documents and a fuller explanation of the "change of circumstances and the passage of time" that allowed the State Department to release without excisions the 19 once redacted documents. In March 1990, the district court entered a final order denying Bonner's discovery requests and dismissing the action with prejudice. *See Bonner v. United States Dep't of State*, No. 86–769 (D.D.C. March 9, 1990) (Order), J.A. at 43. The court found "[l]ogically implicit" in the parties' stipulation concerning the representative sample, an "understanding that the Court's ruling concerning the sample would apply to all of the approximately 1,800 documents at issue in this case." *Id.* at 2, J.A. at 44.

## II.

■ Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved. *See, e.g., Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir.1986); *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1490 (D.C.Cir. 1984). Representative sampling allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index or an *in camera* inspection. If the sample is well-chosen, a court can, with some confidence, "extrapolate its conclusions from the representative sample to the larger group of withheld materials." *Fensterwald v. United States Central Intelligence Agency*, 443 F.Supp. 667, 669 (D.D.C. 1977).

Representative sampling thus involves a trade-off between the high degree of confidence that comes from examining every item for which exemption is claimed, and the limitations of time and resources that constrain agencies, courts, and FOIA requesters alike. But the technique will yield satisfactory results only if the sample employed is sufficiently representative, and if the documents in the sample are treated in a consistent manner.

■ The 63 document sample here was selected by agreement of the parties. There is therefore no attack on the sample's capacity to represent the entire group of 1,776 documents.[7] The question before this court, then, is whether the release of the 19 documents in full, with no accounting for the original withholding, undermined the confidence one can have that the Department correctly invoked FOIA to shield information contained in the 1,713 documents not described in the *Vaughn* index.[8]

---

**7.** The 63 sample documents were drawn from the 1,033 partially redacted documents, and not the 743 that had been fully withheld. However, the descriptive index, prepared by the State Department to provide basic information on the 743, allowed Bonner and the court reasonably to anticipate that the 63 documents were in fact representative of both the partially and the fully redacted groups of documents. At oral argument, Bonner's counsel explained:

COUNSEL: The 63 documents came from the about 1,000 documents that had been partly withheld. After reviewing the descriptive index, we believe that the 63 documents do present an accurate picture of the 1,700 plus documents at issue here.

COURT: Then are you now saying that the government is right that the parties are in agreement and the district court correctly observed that the court's ruling concerning the sample would apply to all the approximately 1,800 documents at issue in this case?
COUNSEL: That is correct.

**8.** As noted above, Bonner does not challenge the adequacy of the *Vaughn* index for the items it covered, nor the district court's determination that the State Department properly withheld portions of these 44 documents covered by the index.

The district court reviewed individually the State Department's exemption claims for each of the 44 documents. That court believed, however, that it had no similar role to play with respect to the 19 documents newly released in full. Given the importance in a sampling case that all items in the sample be treated consistently, we are not satisfied that the sample's reliability remained intact despite the elimination of 19 documents from court review. The 19 documents, judging by the State Department's full release of them, are indeed different from the 44. In contrast to the 44, the 19 contain information the State Department considered a threat to national security in 1985 and 1986, but not in 1987. While we agree with the district court that the full release of the 19 documents does not demonstrate bad faith on the part of the State Department, doubt may nonetheless be cast on the agency's original exemption claim when the information in question is found releasable within two years after it is withheld. These considerations persuade us that it is incumbent upon the district court to examine closely the State Department's initial exemption claims for the 19 documents.[9]

The district court was concerned that it lacks authority under FOIA to proceed further, once requested information has been released. Had Bonner in this case simply requested 63 documents and received 19 without deletions, the district court would have been entirely right that, with respect to those 19, it had "no role to play." *Bonner,* 724 F.Supp. at 1030 n. 4. *See, e.g., Tijerina,* 821 F.2d at 799 (objection to agency's tardigrade pace became moot on release of all nonexempt material); *Crooker,* 628 F.2d at 10 (State Department not required to release 13 documents already released by FBI). But the 19 documents here were part of a representative sample. They count not simply for themselves, but for presumably similar non-sample documents still withheld. The district court, to preserve the representative character of the sample, should have ruled on the propriety of the initial deletions from the 19 documents. That court should have determined whether the excisions originally made in each of the 63 sample documents were proper under FOIA.

### III.

■ FOIA requires the district court to determine *de novo* whether requested information is properly withheld. *See* 5 U.S.C. § 552(a)(4)(B). Bonner argues that this *de novo* standard requires a court to determine whether a document is properly withheld or redacted as of the time of the court's review. FOIA judicial review, however, while *de novo*, remains an assessment of the *agency* decision to withhold a document. That decision, we hold, ordinarily must be evaluated as of the time it was made.

Courts reviewing an agency's action must of necessity limit the scope of their inquiry to an appropriate time frame. In FOIA cases particularly, court review properly focuses on the time the determination to withhold is made, for the Act places a premium on the rapid processing of FOIA requests. *See* 5 U.S.C. § 552(a)(6) (agency must respond to request within ten days); *Afshar v. Department of State,* 702 F.2d 1125, 1138 n. 18 (D.C.Cir.1983) (remand to take account of a change in the world situation would be inimical to the need for speedy and final resolution of FOIA requests). To require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing. *Cf. Lesar v. United States Dep't of Justice,* 636 F.2d 472, 480 (D.C.Cir.1980) (remanding whenever new classification

---

9. In his brief, Bonner argues that the 19 fully released documents covered several topics that were not covered in the 44. *See* Brief of Appellant at 30 n. 21. Although Bonner maintained before the district court that the 19 documents should be reviewed as a part of the representative sample, we have not found in the record where Bonner brought these coverage differen-

tials to the district court's attention. While we do not base our decision on Bonner's allegations that important topics were removed from the sample, we note that in a carefully crafted sample, it would be surprising if a significant number of topics were not eliminated when the sample was reduced by one-third.

scheme is established during appeal would delay FOIA processing).[10]

■ Bonner argues that the State Department's determination, late in 1987, that approximately one-third of the representative sample no longer posed a threat to national security, indicates that one-third of the documents not included in the *Vaughn* index could also be released. We agree that reprocessing the entire group would likely result in the declassification of a number of documents. However, the whole purpose of representative sampling is to reduce the administrative burden of large FOIA requests, and not to compound it. Representative sampling tests the propriety of the agency's FOIA processing. The fact that some documents in a sample set become releasable with the passage of time does not, by itself, indicate any agency lapse. If the sample uncovers no excisions or withholding improper when made, then the agency's action ordinarily should be upheld. As we said in *Meeropol,* 790 F.2d at 959: "The fact that there are documents which while properly withheld at the time the decision to withhold was made were nevertheless not exempt under *new* standards does not indicate error.... The government cannot be expected to follow an endlessly moving target."

■ Bonner observes that the very "change of circumstances" recited by the State Department when it released the 19 documents in full would allow him to file a new FOIA request, which would trigger reprocessing of the over 1,700 documents still withheld in whole or part. That observation, however, points up why, absent error in the State Department's 1985–1987 processing of Bonner's requests, reprocessing should not be ordered in this action. Bonner may indeed file a new FOIA re-

quest, but if he does, he will stand in line behind other FOIA requesters. Unless the State Department unlawfully withheld information in its prior responses, a court has no warrant to place Bonner at the head of the current State Department FOIA queue.

We turn, finally, to the appropriate *Vaughn* index treatment of sample documents no longer withheld or redacted. Once an agency has released the full text of a document, there obviously is no need for that text to be summarized or described. A *Vaughn* index, however, also provides " 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant.' " *King v. United States Dep't of Justice,* 830 F.2d 210, 219 (D.C.Cir.1987) (quoting *Mead Data Cent. v. United States Dep't of the Air Force,* 566 F.2d 242, 251 (D.C.Cir. 1977)). For FOIA Exemption 1 (national security) claims, we have said that the *Vaughn* index must "explain how [the withheld] material falls within one or more of the categories of classified information" and "how disclosure of the material ... would cause the requisite degree of harm to the national security." *King,* 830 F.2d at 224. A *Vaughn* index, then, for fully but recently released documents that are part of a representative sample, should explain why the once withheld portions were excised at the time of the agency's initial review.

The State Department has invited this court to determine itself the propriety of the original excisions in the 19 documents now fully released. The Department would have us compare the 19 documents as redacted, including the shorthand notations on them citing three different national security classifications,[11] with the ver-

**10.** In certain limited situations, such as the publication of a document after an agency has decided to withhold, it may be appropriate for a court to review the agency decision in light of post-decision changes in circumstances. *Cf. Powell v. Bureau of Prisons,* 927 F.2d 1239 (D.C. Cir.1991) (case remanded when court first learned on appeal that portions of manual were previously released, calling into question agency declaration that entire manual was FOIA exempt); *Carlisle Tire & Rubber Co. v. United*

*States Customs Service,* 663 F.2d 210, 219 (D.C. Cir.1980) (FOIA exemption denied for portions of classified document published in *Federal Register* ).

**11.** The record includes copies of the 19 documents as originally redacted. Next to each of the textual redactions is a marginal notation. Notation "B1," for example, refers to the FOIA national security exemption, 5 U.S.C. § 552(b)(1). Notations "A3," "A5," and "A9,"

sions released without excisions. The Department says that when these texts are "read in the context of the Eaves Declaration, the propriety of the original excisions is readily apparent." [12] *See* Brief for Appellee at 31 n. 20. Such an examination, however, is not one this court of review normally should endeavor in place of the court of first instance.

We do not decide if the record is currently adequate for the district court to determine whether the 19 documents were properly redacted in 1985 and 1986. On remand, the district court may wish to ask the State Department for a supplemental *Vaughn* index accounting for the Department's initial decisions to withhold portions of the 19 documents.

## IV.

■ We have ruled that, as to all 63 documents selected for the sample, the State Department must justify its initial withholdings and is not relieved of that burden by a later turnover of sample documents. On remand, therefore, the district court must determine whether the 19 fully released documents were properly redacted when the State Department, in 1985 and 1986, initially reviewed them. If the court determines that the State Department's exemption claims for significant portions of these 19 documents do not survive inspection, then the propriety of withholding other responsive, but non-sample, documents would come to the fore. In *Meeropol*, 790 F.2d at 960, we said that an error rate of 25% in a representative sample is "unacceptably high." As in *Meeropol*, if the error rate for the sample of 63 documents should prove to be unacceptably high,[13] the

State Department must then reprocess all of the over 1,700 documents at issue and "[t]he operative standards for disclosure ... will be those in effect when the files are reprocessed." *Id.*

For the reasons stated, we vacate the rulings under review to the extent they are inconsistent with this opinion and remand for further proceedings.

*It is so ordered.*

---

refer to Executive Order No. 12,356, 47 Fed.Reg. 14,874, 14,876 (1982), classification categories: section 1.3(a)(3) (foreign government information), (a)(5) (foreign relations), and (a)(9) (confidential source). See note 6 for the text of these provisions.

The shorthand notations, when read with the redacted texts, might enable a court to judge whether the material falls within the cited category. The notations, however, fall short of explaining how disclosure of this information, when it was reviewed in 1985 and 1986, "would [have] cause[d] the requisite degree of harm to

the national security." *See King v. United States Dep't of Justice,* 830 F.2d 210, 224 (D.C.Cir.1987).

12. The Eaves Declaration is the principal component of the State Department's extensive *Vaughn* index which details the exemption claims for the remaining 44 sample documents. *See* note 3.

13. The 19 fully released documents remain a part of a sample of 63 documents. To determine the error rate, the court would consider the unjustified withholdings compared to the total withholdings from all 63 documents.