[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
These actions were brought by The Providence Journal Company, et al. ("Plaintiffs") seeking access to certain records maintained by the State of Rhode Island, the Town of West Warwick, and certain named government officials ("Defendants") pursuant to the Access to Public Records Act found in G.L. 1956 § 38-2-1, et. seq. ("APRA"). These records relate to the Station fire tragedy that ensued on February 20, 2003. Although certain records have been released previously, either voluntarily or as a result of a Consent Order dated January 14, 2004, five categories of records await determination as to whether they may be properly provided to the Plaintiffs. The Plaintiffs have moved for Summary Judgment pursuant to Super. R. Civ. P. Rule 56 claiming that as a matter of law they are entitled to such records. Although the Defendants have objected to the motion, they have not presented any persuasive argument that an evidentiary hearing is necessary for determining whether access is permitted. To the contrary, although the parties may disagree as to the interpretation of law that relates to this case, it cannot be seriously argued that any material facts are in dispute. No party disputes that a request for records was made and denied. Also, the records speak for themselves. The question is whether they are public records and, if so, whether their disclosure is impermissible under certain exceptions contained in APRA.
There are five broad categories of records at issue in this case:
 • West Warwick Police Department communications ("Police Communications");
 • West Warwick Fire Department communications ("Fire Communications");
 • Department of Human Services application list ("DHS list");
• Victim Location document;
 • Certain West Warwick Police reports ("Police Reports").
The Court has conducted an in camera review of the records at issue. At the outset it would be helpful to review the type of information that is presented in these various records.
The Police Communications cover the period from February 20, 2003, 11:00 p.m. to February 21, 2003, 3:00 a.m. There were 356 such communications within that time frame, either by way of 911 calls, radio dispatch, or telephone. Each such communication is presented as an individual track on the compact disc provided. Tracks totaling 276 have previously been provided to the Plaintiff pursuant to the Consent Order. Of the remaining 80 tracks, 20 are not related to the Station fire. Accordingly, 60 remaining tracks are subject to possible access and they may be categorized as follows:
 • 911 calls: 5 (one from a family member, one from a private citizen, one unknown whether from victim or private citizen, and two inaudible).
• Family member phone calls: 40
• Private citizen calls: 13
• First responder phone communication: 1
• Off-duty police communication: 1
The Fire Communications are presented in 6 audio cassettes. A 911
cassette consists exclusively of 911 calls from victims, private citizens and family members of victims. There are 21 such calls. Five additional cassettes are labeled numerically. Cassette #1 consists of 52 communications, 8 of which are unrelated to the Station fire. The remaining 44 calls can be summarized as follows:
 • 911 calls: 3 (one from a victim and two unknown whether from victim or private citizen).
• Family member phone calls: 2
• Private citizen phone calls: 6
• First responder phone calls: 27
• Media phone calls: 6
Cassette #2 consists of 73 communications, one of which is unrelated to the Station fire, and the balance of which are first responder communications. Tapes 3, 4 and 5 contain 39 first responder communications.
The third category of records is the DHS list. It is 278 pages in length and was created by the Office of Governor Donald Carcieri in response to hundreds of individuals who sought public assistance from the Station Fire Family Resource Center.
The fourth category of documents is the Victim Location document. That single page document, dated August 28, 2003, was created by the State Fire Marshall's Office and depicts the locations of 96 bodies at the Station nightclub. It does not identify specific victims by location.
The fifth and final category of records is the Police Records. Those records consist of the following documents:
• Incident report totaling 102 pages.
 • Police officer narrative by 18 different officers totaling 81 pages.
• Evidence log consisting of 2 pages.
• Search Warrant inventory, 1 page in length.
• Multiple witness statements totaling 458 pages.
In determining what, if any, of these public records are subject to release to the Plaintiffs, it is necessary to review certain APRA provisions. Section 38-2-1 presents the purpose of APRA, in which the cornerstone principles of public access and individual privacy are recognized. As stated therein, the purpose of said act is to facilitate public access to governmental records that either pertain to policy making functions of public bodies and/or are relevant to public health, safety and welfare. At the same time, it is recognized that APRA should protect from disclosure information that would give rise to an unwarranted invasion of individual privacy. These dual purposes frequently give rise to conflict and require a balancing analysis when confronted with a specific record request. Section 38-2-10 provides that the public body has the burden of proof in demonstrating that the records in dispute are properly withheld.
In reviewing the Defendants' objection to providing certain records sought by the Plaintiffs, the Court concludes that it would be burdensome and unnecessary to have an item by item review of each individual record sought. The categories and subcategories of records as set forth above are sufficient for analyzing and determining what records should be provided or withheld.
In evaluating the specific record requests that are now before the Court, it is necessary to review § 38-2-2 to comprehend what is a public record within the purview of the APRA. Suffice it to say that all of the records sought by the Plaintiffs in this case are within the broad definition of public record as contained in § 38-2-2(4)(i). Section38-2-2, however, also presents broad exceptions to said definition. A review of these exceptions will be undertaken as it relates to each of the five categories of records for which access is sought.
Turning first to Police Communications, many of these calls (both 911
and telephone calls) are from victims and/or family members of victims. These calls are intensely personal and are intimately intertwined with the Station fire tragedy as it was unfolding. These communications are entitled to protection whether initiated by victims or family members to avoid a highly intrusive interference with the legitimate privacy entitlement these individuals should be afforded. See National Archivesand Record Administration v. Favish, 124 S.Ct. 1570, 158 L.Ed.2d 319,2004 U.S. Lexis 2546, 12 U.S.L.W. 4265 (2004). Furthermore, any legitimate inquiry based on public interest considerations is significantly outweighed by the privacy expectations of victims and family members. Moreover, regarding the 911 calls, only one such call is clearly from a private citizen, as opposed to a victim or family member. That call is appropriately shielded from disclosure under the provisions of G.L. 1956 § 39-21.1-4(2). It is also noteworthy that the content of such call is unrelated to any significant matter of public interest since it simply constitutes a brief notification regarding the emergency.
Thus, all 911 and victim/family member calls within the Police Communications category are properly withheld from disclosure under the exception contained in § 38-2-2(4)(i)(D) and, when applicable, §39-21.1-4(2). To allow access to victim/family members calls would be at variance with the purpose of APRA which recognizes the desirability of preserving individual dignity. This Court cannot conceive of a greater affront to such dignity than permitting others to listen to the anguish that is embodied in such communications.
Regarding the remaining subcategories of Police Communications, the Defendants have failed to demonstrate that they fall within said exception or other exceptions contained in APRA. Specifically, the remaining categories are private citizen phone calls, a first responder call, and an off-duty policy call. As noted, following an earlier hearing giving rise to the Consent Order, the Defendants have failed to satisfy this Court that the disclosure of these categories of calls would significantly impact an investigation or enforcement proceeding or implicate "fair trial" rights of any individual. Furthermore, these calls do not present privacy considerations in the manner that victim/family member calls do. These calls and/or communications should be redacted as previously done consistent with the Consent Order to remove references by name, phone number or other identifying characteristics of the person placing the call.
Turning to the second category of record, the Fire Communications, these calls have been analyzed exactly as were the Police Communications. Victim and/or family member calls are exempt from disclosure. The 911 calls that cannot be classified are withheld from disclosure as well. All remaining calls must be disclosed with appropriate redaction as above noted.
Regarding the DHS application list, the Governor's office has properly withheld access to these records. A review of § 38-2-2(4)(i)(A)(I) readily demonstrates that these records are identifiable to individual applicants for benefits and are thus outside the definition of public record. Moreover, there is no way to redact these records to remove them from such exception. Accordingly, access is denied.
The next category of records is the Victim Location document. After considering the applicable provision of APRA and reviewing the document in issue, the Court is satisfied that it does not fall within an exception under the Act, and thus should be provided. It should be noted that this record is not specific as to any individual victim. It depicts "groupings" of where bodies were found within the Station. Legitimate access by the public is warranted and such access in this Court's opinion would not constitute an unwarranted invasion of individual privacy rights. Nor has it been seriously advanced that disclosure of this document would adversely impact a investigative/enforcement proceeding or any "fair trial" rights of individuals. Furthermore, while it may be true that this document did not exist when the Plaintiffs made the record request, judicial economy and practicality lead this Court to conclude that disclosure be made, rather than require the Plaintiffs to initiate a new request. Furthermore, any effort to immunize such disclosure by asserting that it is not a final report lacks merit. No argument has been advanced that would suggest the document is a preliminary draft, which would make disclosure inappropriate.
The fifth and final category of documents is the Police Reports. As noted previously, these include incident reports, police officer narratives, evidence logs, a search warrant inventory, and numerous witness statements. These records were specifically developed and prepared for criminal investigative purposes and what later became enforcement proceedings as a result of indictments returned by a statewide Grand Jury. As such, the disclosure of these records necessarily would interfere with the criminal prosecutions now pending and arguably could impact the "fair trial" rights of those charged with crimes. Any disclosure of these records should be made in the context of the criminal prosecutions as they unfold.
The Defendants have argued that the record requests made by the Plaintiffs must be evaluated based on the circumstances existing at the time each request was initiated, not at some later point in time such as when the summary judgment motion was made and subsequently argued. The Defendants' argument is advanced in the context of the decision inBonner v. Ginsberg, 928 F.2d 1148 (D.C. Cir. 1991). The Court rejects Defendants' argument. In the context of the case before this Court in which there has been a segmented release of records over time following an initial blanket denial, the Court concludes that it would be inappropriate to apply that general rule. That notwithstanding, the conclusion of this Court as to which of the requested records discussed above would be disclosed and which withheld would be exactly the same, regardless of the point in time such evaluation would be made.
In conclusion, the Plaintiffs in this case have zealously and properly sought access to many public records, the majority of which were subsequently provided voluntarily or by prior or current order of this Court. In certain instances, access has been withheld properly by the public officials, including both the Governor and the Attorney General. These decisions have presented a most daunting challenge for these public officials who have a duty to make available public records while recognizing the legitimate exceptions that relate to the investigative and enforcement proceedings that transpired as a result of this horrific event. And more importantly, in this Court's opinion, these officials, in the wake of this unprecedented human tragedy, have attempted in good faith to fulfill these requirements, while at the same time attempting to protect the privacy interests and the dignity of the victims and their family members.
Counsel are directed to prepare a form of order allowing and denying access to the various records that have been reviewed in camera by this Court, consistent with this decision. If necessary, counsel may petition for supplementary relief to effectuate such disclosure.