**NATURAL RESOURCES DEFENSE COUNCIL, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE, et al., Defendants.**

**No. CV04–2062GAF(RZX).**

United States District Court, C.D. California.

March 21, 2006.

858

David S. Beckman, Natural Resources Defense Council, Santa Monica, CA, Aaron Colangelo, Natural Resources Defense Council, Washington, DC, Kristi M. Smith, Institute for Public Representation–Georgetown University, Washington, DC, David C. Vladeck, Institute for Public Representation, Washington, DC, for Plaintiff.

Joel McElvain, U.S. Department of Justice, Civil Division Federal Programs Branch, Washington, DC, James J. Schwartz, United States Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, Defendants.

## MEMORANDUM AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

FEESS, District Judge.

### I.

### INTRODUCTION

On March 25, 2004, the Natural Resources Defense Council ("NRDC") filed suit in this Court against the United States Department of Defense ("DoD"), Environmental Protection Agency ("EPA"), and Office of Management and Budget ("OMB") under the Freedom of Information Act, 5 U.S.C. §§ 552, *et seq.* ("FOIA") to compel production of documents it requested from these three agencies in 2003 related to perchlorate, a chemical used in rocket fuel. NRDC believes that perchlorate poses extensive public health risks and has contaminated groundwater and drinking water in the United States, and seeks the requested documents

to assess the health risks resulting from these releases.

EPA and DoD moved for summary judgment last year. The Court denied the motions on May 25, 2005 and held that EPA and DoD had not provided sufficient information to demonstrate that documents or portions of documents that were withheld were actually exempt from disclosure. A narrow exception to the Court's holding pertained to maps of water wells, which the Court held had been properly withheld by EPA under Exemption 9 which governs geophysical information. The Court also concluded that DoD had erred in not extending the search to the Air Force, and directed DoD to undertake a search of Air Force records. Because DoD has not yet completed that search, the Air Force production will remain outstanding and DoD will move for summary judgment as to the Air Force documents at a later time. (*E.g.,* DoD/EPA Mot. at 7 n. 3).

OMB and EPA now move for summary judgment and DoD for partial summary judgment (as to all issues except the Air Force documents), asking the Court to approve their withholdings under FOIA exemptions. NRDC does not oppose Defendants' motions for summary judgment on the issues of: (1) the adequacy of OMB's search; (2) OMB's assertion of deliberative process privilege with regard to its withholdings in Categories A–H, defined below, except with regard to assertions of non-waiver and segregability; (3) DoD's assertion of deliberative process privilege with regard to its withholdings in Categories A–E, defined below, except with regard to assertions of non-waiver and segregability; (4) EPA's assertion of deliberative process privilege with regard to its withholdings in all Categories, except with regard to assertions of segregability; and (5) DoD's assertion of attorney-client privilege with re-

gard to its withholdings in Category G. (Pl.'s Mot./Opp. at 2–3 n. 3). The Court finds that these issues are properly not opposed and concludes that Defendants' motions for summary judgment on these issues should be **GRANTED**.

At the same time, Plaintiff opposes Defendants' motions and cross-moves for summary judgment against all Defendants on other issues. For the reasons set forth below, the motions for summary judgment are each **GRANTED IN PART** and **DENIED IN PART** and the Court hereby **ORDERS** as follows:

(1) OMB must release to NRDC the two Category I documents which OMB claims were "leaked" to a lobbying firm;

(2) OMB and DoD are not entitled to summary judgment as to withheld documents that were shared with outside parties, including those designated as contractors, but instead will be allowed *one final opportunity* adequately to justify these withholdings, consistent with the Court's order below;

(3) Likewise, DoD will be allowed *one final opportunity* adequately to justify its withholding of documents where author and recipient have not been identified;

(4) OMB, DoD, and EPA must release to NRDC all segregable factual information contained in Defendants' withheld documents in the following categories:

(a) groundwater contamination with perchlorate;

(b) perchlorate's health effects; and

(c) methods and costs of remediating perchlorate contamination; and

(5) OMB, EPA, and DoD must provide the original justifications for their withholding of all documents from the representative samples which they have subsequently released, and thus will be allowed *one final opportunity* ade-

quately to justify these original with-holdings which cast doubt on the with-holding of all documents which the sample documents represent.

After the information requested from Defendants is received, the Court will determine whether it should assign the case to a third party to review the withheld documents in more detail. *See* 5 U.S.C. § 552(a)(4)(B); *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1042–43 (9th Cir. 1999).

## II.

## STATEMENT OF FACTS

### A. *NRDC'S FOIA REQUESTS* [1]

#### 1. *Requests to OMB*

Plaintiff filed a FOIA request with OMB, the federal agency responsible for coordinating the government's response to perchlorate, on December 22, 2003. (Statement of Genuine Issues ("SGI") ¶¶ 145, 251). Plaintiff requested government records concerning "the toxicity or health or environmental effects of perchlorate," "perchlorate disposal or known or potential releases of perchlorate into the environment," "the detection of perchlorate in groundwater, surface water, drinking water, or soil," and "risk assessment for perchlorate, potential drinking water standards or cleanup standards for perchlorate, any potential National Academy of Sciences study of perchlorate, or any legislation regarding perchlorate." (*Id.* ¶¶ 146, 251).

### B. *THE OMB RESPONSE*

#### 1. *The Search*

OMB, which does not have a separate FOIA office, assigned primary responsibil-

ity for responding to NRDC's FOIA request to the Office of Information and Regulatory Affairs ("OIRA"), which conducted the search with assistance from staff members from other offices in OMB including the Statistical and Science Policy Branch ("SSPB"). (*Id.* ¶¶ 149–152). Two scientists within the SSPB, Nancy Beck, Ph.D, and Margo Schwab, Ph.D, primarily conducted the search for responsive documents. (*Id.* ¶ 153). Dr. Beck delivered copies of the relevant portions of the FOIA request to those OMB staff members whom she believed were reasonably likely to have potentially responsive documents. (*Id.* ¶ 154). Those staff members reviewed their paper files and their e-mail messages stored in their internal email accounts, and forwarded the documents that they identified to Drs. Beck and Schwab. (*Id.* ¶ 155). OMB identified over 800 potentially responsive documents through this process. (*Id.* ¶ 156).

On January 28, 2004, OMB sent an extension-request letter to NRDC, noting the large production that NRDC had requested and stating that OMB would require additional time in order fully to respond to the request. (*Id.* ¶ 157). When NRDC filed suit against OMB and the other Defendants, with summons issued on April 8, 2004, OMB had yet to complete its response. (*Id.* ¶¶ 158–159). At that time, OMB initiated a more extensive search of its electronic e-mail archive, which identified an additional 6,700 documents that were potentially within the scope of NRDC's request but that would require further review and assessment to determine their responsiveness. (*Id.* ¶¶ 160–162).

For each of the approximately 7,500 potentially responsive documents identified

---

[1] NRDC's requests to EPA and DoD were subjects of EPA and DoD's previous motions for summary judgment, and are not at issue

here. The same is true with respect to the adequacy of the searches DoD and EPA performed.

through these two searches (the original 800 plus 6,700), OMB staff were required to open each document and to make a preliminary determination whether the document was responsive, and whether it was releasable, or should instead be withheld under one or more of the FOIA exemptions. (*Id.* ¶¶ 164–165).

### 2. Documents Produced and the Sample Set

Throughout the course of this review, OMB identified responsive, non-exempt documents and released them to NRDC. (*Id.* ¶ 166). Thus far, OMB has released approximately 1,754 documents to NRDC through this process. (*Id.* ¶¶ 167–171).

On November 12, 2004, OMB sent to NRDC a preliminary draft of a *Vaughn* index, identifying approximately 3,199 documents that possibly were responsive to NRDC's request but that were potentially exempt from disclosure under FOIA. (*Id.* ¶¶ 172–173, 175). At this time, OMB had determined that the remainder of the documents it had previously identified were non-responsive. (*Id.* ¶ 174).

The parties agreed that NRDC would identify 320 documents, which was approximately 10% of the entries listed in the draft index, to serve as a sample set for briefing on the parties' summary judgment motions with respect to OMB. (*Id.* ¶¶ 176, 253). On February 23, 2005, NRDC provided OMB with the list of the 320 documents that it had selected to serve as this sample. (*Id.* ¶ 177). OMB has now completed its review of these 320 documents and has determined that 20 of them are not responsive to the FOIA request. (*Id.* ¶ 178). In addition, OMB has released 57 documents to NRDC, stating that some of the documents were exempt from disclosure but that OMB was exercising its discretion to release them. (*Id.* ¶ 179; Arbuckle Decl. ¶ 15; Third Colangelo Decl. ¶¶ 49–51).

### 3. Documents Withheld

OMB continues to withhold, in whole or in part, 243 of the 320 documents NRDC selected for the sample set, all pursuant to the deliberative process privilege of Exemption 5 on grounds that their disclosure would interfere with the internal deliberative processes of OMB and the Executive Branch. *See* 5 U.S.C. § 552(b)(5); (Arbuckle Decl. ¶¶ 180–181).

OMB has placed the 243 documents into nine categories, as agreed to by the parties:

Category *A* (briefing documents, (*see* SGI ¶¶ 186–188));

Category *B* (interagency coordination documents, (*see id.* ¶¶ 189–190));

Category *C* (administrative assessment documents, (*see id.* ¶¶ 191–193));

Category *D* (interim perchlorate guidance, (*see id.* ¶¶ 194–196));

Category *E* (National Academy of Sciences study, (*see id.* ¶¶ 197–199));

Category *F* (the legislative clearance process, (*see id.* ¶¶ 200–204));

Category *G* (Information Quality Act requests, (*see id.* ¶¶ 205–207));

Category *H* (press inquiries and media reports, (*see id.* ¶¶ 208–210)); and

Category *I* (two memoranda from the Administrator of NASA, one directed to the Director of OMB and the other to the Administrator of EPA, relating to EPA's proposal for a draft RfD for perchlorate, that "were apparently leaked to a person outside the federal government," (*see id.* ¶¶ 211–213)).

(*See* Schwab Decl. ¶ 6).

### C. THE EPA AND DOD SAMPLE SETS

In its May 25, 2005 Order, the Court directed DoD, EPA and NRDC "to select,

by agreement, a reasonably sized 'representative sample' of documents grouped into categories, which will serve to represent all of the various classes or categories of documents withheld by each agency." *Natural Res. Def. Council v. U.S. Dep't of Def.*, 388 F.Supp.2d 1086, 1090–91 (C.D.Cal.2005) ("*NRDC I*"). The Court also instructed EPA and DoD to submit new *Vaughn* indices that described the documents with sufficient detail "to enable the Court to determine the applicability of the claimed exemption." *Id.; see Wilderness Soc'y v. U.S. Dep't of the Interior*, 344 F.Supp.2d 1, 14 (D.D.C.2004). The Court stated that its eventual ruling as to the propriety of Defendants' withholding of "any particular sample document or group of sample documents will, of course, apply to all other withheld documents represented by that document or group of sample documents." *Id.* at 1090–91, 1109; *see Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1053 (3d Cir.1995); *Meeropol v. Meese*, 790 F.2d 942, 958–59 (D.C.Cir. 1986).

Accordingly, EPA and DoD conferred with NRDC and reached a stipulation as to the selection of a random sample of their withheld documents, supplemented by documents selected by NRDC. (SGI ¶ 234). EPA and DoD have drawn samples in accordance with the stipulations, and have prepared *Vaughn* indices to explain their withholdings. (*Id.* ¶ 235). As the parties agreed, NRDC selected 15 documents from each of EPA and DoD to be included in the representative samples, and the remainder of the samples were randomly selected from the entire body of documents withheld by EPA and DoD. (*See* 07/08/05 Stip. & Order Regarding Selection of Sample Docs.). EPA and DoD placed the documents into the following seven categories:

*Category A* (draft responses to external inquiries);

*Category B* (drafts of memoranda);

*Category C* (briefing materials);

*Category D* (internal memoranda);

*Category E* (internal notes);

*Category F* (documents shared with, or created by, contractors or consultants of an agency); and

*Category G* (as to DoD only, documents subject to attorney-client privilege).

(*See id.* at 2). After reviewing the representative samples, EPA designated two additional categories of withheld documents, (*see* Second Farland Decl. ¶ 5), and DoD added three subcategories to Category A, (*see* Fifth Aly Decl. ¶ 4). EPA and DoD placed the documents that EPA had selected for inclusion in the sample into a separate, additional category different from the categories of documents to which the parties had agreed. (*See* Second Farland Decl. ¶ 5; Fifth Aly Decl. ¶ 4).

**D. DOCUMENTS RELEASED FROM THE SAMPLE SETS**

After the parties selected the representative samples that would serve as the basis for the pending summary judgment motions, Defendants released to NRDC a number of documents from those samples. (*See* SGI ¶ 290). As mentioned above, OMB released 57 documents out of 320, or 17.8%, in full or in part, (SGI ¶ 179; Arbuckle Decl. ¶ 15); EPA released 24 out of 199, or 12.1%, (Second Farland Decl. ¶¶ 7, 23); and DoD released 33 out of 167 documents, or approximately 20% of its sample, (Fifth Aly Decl. ¶ 11). Since NRDC selected the OMB sample, all 57 documents were released from NRDC's selections; as to the 15 documents NRDC selected from EPA's and DoD's withholdings, these agencies released 6 and 4 documents, respectively. (Third Colangelo Decl. ¶ 52; SGI ¶ 293).

Defendants offer various comments on the releases. OMB claims that "some of these documents have been discretionarily released." (Arbuckle Decl. ¶ 15). EPA claims that "the majority of the releases are discretionary," but notes that three documents were improperly withheld because they were not generated by a government contractor or consultant or because they were developed for outside parties. (Second Farland Decl. ¶¶ 7, 23). DoD states that "a number of documents have been determined to be releasable to the plaintiffs [sic] in whole or in part." (Fifth Aly Decl. ¶ 11). Defendants do not provide their original justifications for withholding these documents in the supporting documentation for their present motions. (SGI ¶ 294).

## III.

## DISCUSSION

Having reviewed the legal context and requirements of FOIA in detail in May in ruling on Defendants EPA's and DoD's previous motions for summary judgment in this case, the Court does not find it expeditious to repeat that review here. Therefore, the Court focuses on the specific issues that are the source of contention between the parties, addressing each issue in turn.

### A. THE TWO OMB DOCUMENTS ALLEGEDLY "LEAKED"

■ OMB is withholding two documents under Exemption 5—OMB 2003–2–45 and OMB 2003–3–45 (Category I)—that were provided to a non-government lobbying entity, the EOP Group, a firm whose clients include corporations in the aeronautics and chemical industries. (*See* Arbuckle Decl. ¶¶ 251–253, ¶¶ 256–257; Third Colangelo Decl. ¶¶ 10–12, Exs. A–E). The Court has concluded that these documents must be released to NRDC.

These documents are one-page letters from the Administrator of NASA, one to the Director of OMB and one to the Administrator of EPA, with regard to NASA's concerns about EPA's proposed draft reference dose for perchlorate. (SGI ¶¶ 211–213, 255). OMB provides no persuasive argument why they should be withheld from NRDC when they were given to EOP. According to NRDC, the EOP Group's clients have a substantial interest in the contents of the documents—an interest which is contrary to NRDC's—because the amount of perchlorate cleanup required depends on the reference dose the government adopts, and these two documents discuss the reference dose. (Third Colangelo Decl. ¶ 13).

In his declaration in support of OMB's motion for summary judgment, Arbuckle states that "OMB *does not know how the non-Federal entity received the internal communications, but it would appear to have resulted from a 'leak.'*" (Arbuckle Decl. ¶ 51 (emphasis added); *see also* SGI ¶ 220). Thus, OMB maintains that the EOP Group came into possession of the documents in this "unauthorized" way and that the documents have not, to the best of OMB's knowledge, "otherwise been used by the agency in its dealings with the public." (Schwab Decl., Ex. A [OMB *Vaughn* index] at 238, 239). Accordingly, OMB asserts that it is withholding the documents from NRDC in order to "preserv[e] the confidentiality of internal Executive Branch deliberations." (*Id.* at 237–38, 239). NRDC argues, however, that these "leaked" documents are no longer confidential and that this waives the deliberative process privilege.

The Court concludes that even if the documents were in fact leaked—which OMB acknowledges it "does not know" to be true, (*see* Arbuckle Decl. ¶ 51)—OMB

cannot claim the protection of the deliberative process privilege because its actions after the EOP Group received the documents suggests that EOP was receiving preferential treatment. Not only did OMB apparently not take any affirmative steps to inhibit the EOP Group's further dissemination of the letters, *see, e.g., United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir.1992), but *OMB staff and the EOP Group apparently discussed the content of the letters*. (Third Colangelo Decl. ¶¶ 10–14, Exs. F [OMB 2003–2–45], G [OMB 2003–3–45], H [OMB 2003–3–46] ). These conversations waive the deliberative process privilege because the document was *"used by the agency in its dealings with the public."* *Coastal States*, 617 F.2d at 866 (emphasis added).

The conversations with the EOP Group also suggest preferential treatment. Preferential treatment occurs when an agency releases a document to one private party and then refuses to release the document to another private party. The Ninth Circuit has held that such disclosure waives any otherwise applicable FOIA exemption since *"FOIA does not permit selective disclosure of information only to certain parties."* *Maricopa*, 108 F.3d at 1088 (emphasis added); *see also N. Dakota*, 581 F.2d at 182; *Cooper*, 594 F.2d at 488. This principle is consistent with the Supreme Court's statement that "once there is disclosure, *the information belongs to the general public*," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004) (emphasis added), and with the Ninth Circuit's rule that the absence of voluntary disclosure is a fact that can *"weigh heavily"* against forced disclosure—it is not dispositive against forced disclosure. *Mobil Oil Corp.*, 879 F.2d at 702 (emphasis added). Whether *Mobil Corp.* even applies is dubious since OMB has not demon-

strated that the documents *were not voluntarily disclosed*, perhaps by NASA.

*N. Dakota ex rel. Olson v. Andrus*, 581 F.2d 177, 182 (8th Cir.1978) (*"N.Dakota"*), upon which Plaintiff relies, provides guidance. That case dealt with the government's voluntary disclosure of documents to one party during a discovery dispute in litigation. The court found—in part because that party's interests were "adverse to if not inconsistent with the requesters[' interest]," *id.* at 180—that the government could not thereafter apply Exemption 5 to restrict the requesters' access to the documents. As the Court discussed the issue:

> The selective disclosure exhibited by the government in this action is offensive to the purposes underlying the FOIA and *intolerable as a matter of policy. Preferential treatment of persons or interest groups fosters precisely the distrust of government that the FOIA was intended to obviate.*

581 F.2d at 182 (emphasis added); *see also Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (FOIA was designed to curtail government secrecy); *Cooper v. Dep't of the Navy*, 594 F.2d 484, 486, 488 (5th Cir.1979).

Therefore, NRDC's motion on this issue is **GRANTED**, OMB's motion is **DENIED**, and OMB is **ORDERED** to release the two Category I documents to NRDC

### B. DOCUMENTS SHARED WITH OUTSIDE PARTIES, INCLUDING CONTRACTORS

█ NRDC argues that OMB and DoD have also failed to show that the deliberative process privilege has not been waived for documents that were either originated by or knowingly shared with outside parties—specifically with third parties that OMB and DoD identify simply as a "contractor" or "consultant." (Pl.'s Mot./Opp. at 18; Third Colangelo Decl. ¶¶ 16–20 (identifying 6 OMB documents and 10 DoD

documents challenged); SGI ¶¶ 265, 272 (identifying 35 documents DoD is withholding which were sent to or from a "DoD contractor" or "DoD support contractor")).[2] The main example of impropriety that NRDC cites involves a single person—Mr. Belzer—who is connected to documents withheld by both OMB and DoD. NRDC calls the disclosure of records to Belzer "[t]he most glaring example" of DoD's and OMB's failure to establish that the third parties who had access to documents being withheld from NRDC meet strict requirements set out in *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) ("*Klamath*"), partly in light of Plaintiff's belief that Belzer was not a contractor at all.

Although courts have upheld the application of Exemption 5 to documents generated by or disclosed to non-government parties such as contractors and consultants, they have done so generally when those parties were serving as agents of the government agency and were directly involved in the internal agency decision-making that FOIA protects. *See Klamath*, 532 U.S. at 10–11, 121 S.Ct. 1060 (collecting cases). In addition, argues NRDC, the contractor exception is a narrow one which is maintained only when an outside party is working *as an agent of the government* to the point that the party may not

> represent an interest of its own, or the interest of any other client, when it advises the agency that hires it. Its only obligations are to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do.

*Id.* at 11, 121 S.Ct. 1060; *see Physician's Comm. for Responsible Medicine v. Nat'l Institutes of Health*, 326 F.Supp.2d 19, 29–30 (D.D.C.2004).

In *Klamath*, the Supreme Court addressed the issue of whether communications between Indian tribes and the Department of the Interior regarding the tribes' interest in water allocation were exempt as "intra-agency memorandums or letters" that would normally be privileged in civil discovery. *Klamath*, 532 U.S. at 4–5, 121 S.Ct. 1060. Six of the documents at issue were prepared by the tribes, and one by the government. *Id.* at 6, 121 S.Ct. 1060. The Court held that since the Indian tribes had been communicating with the government *not as its agents but instead in pursuit of their own interests which were adverse to other claimants' interests,* the Indian tribes' communication could not be analogized to the contractor/consultant communications that had been protected under Exemption 5 by such cases as *Formaldehyde Institute. Id.* at 12, 121 S.Ct. 1060 (emphasis added).

Under some circumstances neutral third parties may come within the scope of the exemption. In *Formaldehyde Institute,* the court dealt with peer reviewers of government-employee publications, and held that the district court had "err[ed] in focusing on the absence of any formal relationship between the Journal's reviewers and [the agency]." 889 F.2d at 1123. The court stated:

> '[W]hether the author is a regular agency employee or a temporary consultant is irrelevant; the pertinent element is the role, if any, that the document plays in the process of agency deliberations.' . . . If the Review Letter is 'deliberative in character,' then it may come

---

**2.** In contrast to OMB and DoD, EPA does provide additional discussion of its contractors and the capacities in which they worked, on which basis NRDC does not challenge EPA's withholdings based on the contractors. (*See* Farland Decl. ¶ 16).

within the confines of Exemption 5 'notwithstanding its creation by an outsider.' . . . The pertinent issue here is what harm, if any, the Review Letter's release would do to HHS' deliberative process. *Formaldehyde Institute,* 889 F.2d at 1123–24.

The record does not clearly describe how Belzer used the information disclosed to him. The Court is not persuaded that he was only a contractor and that the information was not *"used by the agency in its dealings with the public."* *Coastal States,* 617 F.2d at 866 (emphasis added). OMB claims that "[n]one of its withheld documents have been used by the agency in its dealing with the public, and indeed none of the documents [except the Category I documents] . . . have been released to persons outside the government," and cites generally to its *Vaughn* index. (SSUF ¶ 219). The *Vaughn* index, in turn, identifies outside parties with such information as "DoD contractor," "government consultant," or "government contractor." (Schwab Decl., Ex. A [OMB *Vaughn* index], *e.g.,* OMB 2003–2–825, OMB 2003–2–175, & OMB 2003–3–140). DoD makes a similar claim, that "[t]he exempt documents have been shared only with employees of the Government and contractors of DoD or another Executive Branch agency, and the documents were shared with contractors only pursuant to the performance of their contracts." (Fifth Aly Decl. ¶ 5). Accordingly, DoD argues that the third parties "acted in the capacity of an agent of the federal Government for purposes of those communications." (SSUF ¶ 239 (citing Fifth Aly Decl. ¶ 5)).

However, NRDC's citation to Mr. Belzer as an example clearly demonstrates that Defendants have not adequately justified the withholding of documents shared with supposed contractors. Belzer, a former OMB staff economist, is the President of a non-profit group called Regulatory Checkbook, which Belzer has claimed is *"beholden to no interested party inside* or outside *the federal government."* (Third Colangelo Decl. ¶¶ 21–23 (emphasis added)). Moreover, Belzer has stated publicly that he "routinely provides information to OMB for a variety of reasons" but *not* that he is a DoD or OMB contractor. (SGI ¶ 271; *see* Third Colangelo Decl. ¶ 26). NRDC also points out that Belzer represents defense industry clients that have a financial interest in the government's regulation of perchlorate, (*see* Third Colangelo Decl. ¶¶ 23–24), and that some of the documents that OMB and DoD are withholding appear to further these interests—such as a set of e-mails dealing with the perchlorate reference dose. (*See* Pl.'s Mot./Opp. at 20 (citing SGI ¶¶ 268–270; *e.g.,* DoD 24 and OMB 2003–1–133)).

NRDC also notes that some of the documents shared with Belzer were received from Belzer's e-mail address *at Regulatory Checkbook,* and maintains that Belzer was performing work for industry at the time during which he was supposedly a contractor for the government. (*See* Fifth Aly Decl., Ex. A [DoD *Vaughn* index] (DoD 220 (e-mail from Belzer's Regulatory Checkbook e-mail address)); Fourth Colangelo Decl., Attach. B (same, as to three e-mails)). Defendants state that all of these facts—as to Belzer's statements and position—are not material, (SGI ¶¶ 266–269; 271), but the Court disagrees.

All of these facts belie Defendants' claim that Belzer is a government contractor to DoD or OMB and imply that, even if he is, communications with him may not be able to survive *Klamath's* teaching that information shared with contractors may not be privileged when the contractor is not acting solely as an agent for the government. Defendants' position is contradicted even

simply by Belzer's claim that Regulatory Checkbook is not beholden to the government, and hence it is not clear that these documents are "inter-agency or intra-agency" documents covered by Exemption 5 at all. *See* 5 U.S.C. § 552(b)(5). Thus, NRDC argues that OMB and DoD have waived privilege with regard to documents produced by or shared with him and, by extension, with other "government contractors" whom OMB and DoD do not adequately identify by providing specific information about the contractors and the capacities in which they worked.

OMB responds that Belzer served under a contract with DoD to assist with the review of perchlorate issues from December 20, 2002 through January 6, 2005. (Sixth Aly Decl. ¶ 3(A)). According to DoD, Belzer was an employee of ASE, a wholly-owned subsidiary of Booz Allen & Hamilton, which had contracted with the Office of the Deputy Under Secretary of Defense for Installations and Environments for assistance on perchlorate-related matters. (*Id.*). OMB asserts that it, as well as DoD, "has withheld only those documents that were originated by, or shared with, Mr. Belzer during his tenure as a contractor; to the extent that any documents were shared with him outside this period, those documents have been released," and cites generally to its own and to DoD's *Vaughn* indices. (SSUF ¶ 300). Notably, however, this statement does not tell the Court in what capacity Belzer acted when he obtained or generated each challenged document.

█ To the extent that NRDC advocates such an expansive reading, the Court is *not* convinced that *Klamath* stands for the proposition that contractors must be disinterested in all of their activities or work full-time for the government in order to warrant FOIA protection for documents shared with or generated by them. But the Court *is* convinced that contractors must act as agents of the government with respect to the documents that are claimed to be withheld, and those documents must play a role in the agency's deliberative process. 532 U.S. at 10–11, 121 S.Ct. 1060. However, given the contradictory information in the record about Belzer's status, the Court is convinced that OMB and DoD are not entitled to summary judgment as to any documents shared with him *or with other contractors because the Belzer example casts doubt on Defendants' unsupported claims as to all of them.*

Accordingly, NRDC's point that Defendants must at least establish that the third parties were contractors *and that the communication with them occurred in that capacity* is well taken. In this regard, the Court notes that DoD has not provided a copy of Belzer's employment contract which could help to resolve these questions, and has provided varying justifications for its withholding of "Belzer-related documents" over time. That is, instead of identifying Belzer or explaining that the documents were being shared as part of a contractor relationship, DoD simply claimed he was a "contractor," with the more recent addition that he works for Booz Allen & Hamilton, Moreover, "[e]ven at this juncture, the government's explanation is inconsistent, confusing both the name of the organization Mr. Belzer is said to have worked for and its relationship to Booz Allen & Hamilton (BAH)." (Pl.'s Reply at 10 (comparing Defs.' Reply at 6 and SSUF ¶ 299)) (identifying Belzer as an employee of ACE, a subcontractor of BAH) *with* ¶ Sixth Aly Decl. ¶ 3(A) (identifying Belzer as an employee of ASE, a wholly-owned subsidiary of BAH); *see also* Fourth Colangelo Decl. ¶¶ 6–7.

Given the inconsistencies in Defendants' identification of who exactly employed Belzer and the conclusory justifications that

OMB and DoD offer for their contractor/consultant withholdings in general, the Court shares NRDC's conclusion that OMB and DoD have not adequately justified their withholding of documents shared with or generated by Belzer or contractors generally. Accordingly, OMB's and DoD's motions for summary judgment are **DENIED** on this issue. However, Plaintiff's motion is also **DENIED IN PART** as to the release of all of these documents because the Court believes it should give Defendants *one final opportunity* to provide specific and precise identification of Belzer's *and each other contractor's* position and the capacity in which each document was exchanged, consistently with its burden of showing that the information qualifies as "inter-agency or intra-agency memoranda." Defendants' citations generally to their *Vaughn* indices in the justifications are inadequate, and "conclusory and generalized allegations of exemptions" are insufficient to justify withholding. *Church of Scientology,* 611 F.2d at 742.

## C. DOCUMENTS FOR WHICH DOD FAILS TO IDENTIFY AUTHOR AND RECIPIENT

■ NRDC also asserts that certain other documents in DoD's sample set must have been shared with outside parties and that the deliberative process privilege was thereby waived, because DoD's *Vaughn* index does not list the author or recipient of those documents. DoD asks the Court to reject NRDC's "speculation to this effect" by explaining that the index lacks this information for the documents listed by NRDC because that information is "simply unavailable." As DoD states,

the documents are items found in the agency's files ... that do not contain any information revealing their authors or recipient lists.... Nonetheless, each of these documents are internal memoranda, and bear *all the indicia of documents that were used solely internally*

.... There is no reason to believe that any of these documents were distributed outside the Government in any form.

(Defs.' Reply at 18 (citing SSUF ¶¶ 313–315) (emphasis added)).

Even though NRDC has not provided specific information to undermine DoD's assessment that these documents have never been released, it was not NRDC's burden to do so in this situation. In its May Order, the Court specifically referred to documents for which DoD "fail[ed] to provide the names or organizational affiliations of the document's author, recipient, or copyees on its *Vaughn* list," and concluded that "it is entirely speculative whether any of these alleged 'predecisional' documents were disclosed to third parties." *NRDC I,* 388 F.Supp.2d 1086, 1104. As Plaintiff points out, DoD has not cured the problem here, (*see* Third Colangelo Decl. ¶ 28 (describing approximately 25 documents that fail to identify the author or recipients)), despite the fact that the Court instructed Defendants that *Vaughn* indices " 'must also provide information on any other potentially dispositive issues identified by the court (e.g., waiver of privilege because documents were adopted as final policy or because they were released to third parties).'" *NRDC I,* 388 F.Supp.2d 1086, 1109 (quoting *Judicial Watch,* 297 F.Supp.2d at 270–71).

■ Even if DoD had established in a non-boilerplate manner its claim that the formatting of these documents did not indicate release outside of the DoD, *see, e.g., Wiener v. Fed. Bureau of Investigation,* 943 F.2d 972, 978–79 (9th Cir.1991), DoD has failed to establish that they are actually protected under Exemption 5 because there is no information upon which the Court can assess its claim that these documents are predecisional and deliberative. For an agency to withhold a document

pursuant to the deliberative process privilege, that document has to "satisfy two conditions: [(1)] its source must be a Government agency, and [(2)] it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath,* 532 U.S. at 8, 121 S.Ct. 1060. To qualify for protection under this second prong, a document must be both: (1) "predecisional;" and (2) "deliberative." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.,* 861 F.2d 1114, 1117 (9th Cir.1988). The Court has described these requirements in detail in its previous order.

## D. SEGREGABLE FACTUAL MATERIAL

There are three areas in which NRDC contends that Defendants withhold purely factual, non-deliberative information, concerning: (1) where, and the degree to which, perchlorate contaminates the groundwater of the United States; (2) the health effects of perchlorate contamination; and (3) the methods and associated costs of remediating perchlorate contamination. Although NRDC focuses on certain examples, in total NRDC claims that 77 documents are being improperly held by Defendants in these categories. (*See* Fourth Colangelo Decl. ¶¶ 12–13).

Defendants claim that they have complied with their obligations to release all segregable information, (*see, e.g.,* Arbuckle Decl. ¶¶ 74–75), and maintain that additional releases are prohibited because they would allow NRDC to reconstruct the nature of the agency's deliberations. (*E.g.,* OMB Mot. at 20); *see Nat'l Wildlife Fed'n,* 861 F.2d at 1119–22; *Citizens Comm'n on Human Rights v. FDA,* 45 F.3d 1325, 1328 n. 8 (9th Cir.1995); *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1537–38 (D.C.Cir. 1993). The Court concludes, however, that Defendants have clearly not supplied the requisite specificity and detail in their seg-

regability justifications, as set forth here for each category of documents, *see Mead Data Cent.,* 566 F.2d at 261, and that all segregable factual material affiliated with these documents must be released.

### 1. Groundwater Contamination with Perchlorate

█ NRDC challenges the withholding of four documents in this category, (*see* SGI ¶¶ 275–277, 289), and the Court concludes that all factual material in these documents, DoD 1640, OMB 2003–3–756, OMB 2003–3–844 and OMB 2003–3–1005 must be released to NRDC, along with the factual material in all the other documents in the representative sample that they represent.

Document DoD 1640 is a letter with three attached charts—five, eight, and 33 pages in length—containing "perchlorate sampling data at various military installations." (Fifth Aly Decl., Ex. A [DoD *Vaughn* index] at 137). DoD claims that disclosing the data, which was attached to a draft letter but not to the final, publicly released letter, would reveal internal agency deliberations, and relies on the statement in *Mobil Oil Corp.* that " '[i]f the segment appeared in the final version, it is already on the public record and need not be disclosed. If the segment did not appear in the final version, its omission reveals an agency deliberative process.' " 879 F.2d at 703 (citation omitted). However, this analogy is not compelling because *Mobil Oil Corp.* dealt with segments (pages) of *discussion*, not with *data*, as is at issue here. *Id.*

In contrast, Plaintiff relies on *Nat'l Ass'n of Home Builders v. Norton,* where the court required disclosure of lists of locations of endangered species because the lists did not reflect an agency position or reveal a decision-making process. 309 F.3d 26, 39 (D.C.Cir.2002) ("*Home Build-*

ers"). Like the list at issue in *Home Builders*, there is no indication that the data at issue here would have required discretion to compile—and DoD's terse explanation in the *Vaughn* index to justify withholding does not advance this discussion. (*See* Fifth Aly Decl., Ex. A [DoD *Vaughn* index] at 137). The Ninth Circuit has accepted that certain types of analyses and estimates are "closer to fact [than to deliberations] and would not reveal the agency's protectable thought processes." *Assembly of Cal.*, 968 F.2d at 922 (census figure calculations would not reveal thought processes); *see also Carter*, 307 F.3d at 1091–92 (adjusted census data would not reveal thought processes). The same situation is present as to the site-specific data at issue in this case.

■ Document OMB 2003–3–756 is a 1.5–page e-mail that contains "perchlorate data from EPA that Mr. King explains is incomplete, as well as the sources of that information, for the [recipient's] possible comment," and an attached 4–page spreadsheet of the data. (Schwab Decl., Ex. A [OMB *Vaughn* index] at 36). OMB claims that because the EPA official explains that the data is not complete for purposes of the two agencies' deliberations regarding the implications of EPA's draft risk assessment, the release of the chart would reveal by negative implication the considerations that were at issue for the OMB and EPA decision-makers and hence is not segregable. (*Id.* at 36; *see* Defs.' Reply at 8). However, as the Court indicated in its May Order, the fact that a document is a draft does not automatically protect it from disclosure. As the court did in *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429 (D.C.Cir.1992), OMB could resolve its concerns quite simply by including a disclaimer on the data indicating that it is incomplete. *Id.* at 1437.

Document OMB 2003–3–844 is a 1.5–page e-mail that contains information "on the results and implications of perchlorate monitoring near a military site." (Schwab Decl., Ex. A [OMB *Vaughn* index] at 39). According to OMB, this e-mail should not be disclosed because it contains an EPA official's thoughts and impressions in the form of a briefing on the results, and writes that "NRDC presents no reason to discredit OMB's conclusion that any factual material in the document cannot be separated from the official's thoughts and impressions on these deliberative issues." (Defs.' Reply at 9). However, it is not NRDC's burden to present a reason; it is OMB's burden to **establish** that the factual material cannot be segregated—which it has been instructed to accomplish specifically through reference to the proportion of factual material in the e-mail, as was mentioned in *Mead Data Central*, 566 F.2d at 261, and *Judicial Watch*, 297 F.Supp.2d at 271, but has not attempted to do.

Document OMB 2003–3–1005 includes as an attachment "a 31–page DoD report on perchlorate occurrence survey." (Schwab Decl., Ex. A [OMB *Vaughn* index] at 44; SGI ¶ 289).[3] NRDC makes an especially strong argument as to this document that OMB cannot plausibly maintain that the factual material in this document is "inextricably intertwined" with deliberative matters. *E.g., Ryan*, 617 F.2d at 790. The document contains a six-sentence e-mail and then a *31–page attachment*. As the Ninth Circuit has noted, Congress did not intend to create through Exemption 5 a "wooden exemption permitting the withholding of factual material otherwise available on discovery *merely because it was*

---

**3.** A comparable document which NRDC mentions in its Reply is document DoD 900, for which DoD withholds in full a 3–page e-mail and 20 pages of attachments concerning "sampling and testing efforts regarding perchlorate." (Pl.'s Reply at 16).

*placed in a memorandum with matters of law, policy, or opinion.*" *Nat'l Wildlife Fed'n,* 861 F.2d at 1120 (emphasis added).[4] Defendants respond that the document is deliberative because:

it reflects the author's recommendations and analysis regarding recommended methods of perchlorate monitoring. Apart from three pages of factual material regarding perchlorate detections reflected in the report that OMB has elected to release, the remainder of any factual material in the report is not segregable from the author's recommendations and analysis on the issue of methods of perchlorate surveying.

(Defs.' Reply at 10 (citing SSUF ¶ 306)). NRDC, however, appears quite properly to remain skeptical of OMB's claim that the remaining *28 pages* of the report contain no segregable factual information. (*See* Pl.'s Reply at 15–16).

Especially given OMB's terse statement in the *Vaughn* index to justify the segregability, the Court shares NRDC's skepticism over OMB's claim of exemption. OMB states:

"The document has been partially released. The second attachment (one page) has been released. The remaining portion is being withheld in full—six

sentences and the first attachment (the 31–page report). Any factual information in these six sentences and 31–page report are so intertwined with [the recipient's] personal thoughts that disclosure would reveal those thoughts and the specific considerations associated with the decision-making process of the executive branch."

(Schwab Decl., Ex. A [OMB *Vaughn* index] at 45). In this description OMB provides no information about the division of information in the report or its mandate, which the Court could consider in assessing privilege. *See Petroleum Info. Corp.,* 976 F.2d at 1434–36.

The Court also notes that OMB's statements in the *Vaughn* index justifying withholding of factual material are unsatisfactory. Each one takes almost exactly the same form, stating: "Any factual information in these pages is so intertwined with [the sender's] personal thoughts that disclosure would reveal the specific considerations associated with the decision-making process of the executive branch." (Schwab Decl., Ex. A [OMB *Vaughn* index] at 37; *see also id.,* Ex. A [OMB *Vaughn* index] at 39–40). The Court will not grant OMB's motion for summary judgment when it jus-

---

4. NRDC notes the particular implausibility of OMB's position as to this document because the *Vaughn* index says that it cannot be disclosed because the report was "so intertwined with *[a recipient's]* personal thoughts that disclosure would reveal those thoughts." (*See* Schwab Decl., Ex. A [OMB *Vaughn* index] at 44 (emphasis added); SGI ¶ 289). As NRDC argues, "[w]hile the e-mail itself may properly include such thoughts, and thus be withheld, it is beyond logic that factual information in a separate 31–page report sent by an outside contractor could be comprised of the personal thoughts *of the recipient of the document.*" (Pl.'s Mot./Opp. at 24 (emphasis added)).

Defendants dismiss NRDC's concern and state that this situation resulted simply from a "clerical error." (Defs.' Reply at 10). Based

on this response, NRDC takes issue with the fact that even when Defendants *admit* that their justifications fail to support their withholdings, they claim that the improper withholdings are *due simply to mistakes.* Document OMB 2003–3–1005 is not unique in this regard. Document DoD 890, for instance, is a 3–page memorandum that "analyzes perchlorate and several other chemicals and the potential benefits and disadvantages of the use of each as a chemical for fuel," which DoD claims contains simply "no factual information." (Fifth Aly Decl., Ex. A [DoD *Vaughn* index] at 75). DoD responds that the *Vaughn* index contained a "clerical error" and that the factual information in the document cannot be "extricated" from deliberative information. (*See* Defs.' Reply at 19).

tifies its actions with a boilerplate response. Thus, in each of these four instances, the Court agrees with NRDC that Defendants have failed to show how disclosure of the factual information withheld would allow the public to "reconstruct the predecisional judgments" by which they arose or is otherwise inappropriate. *See Nat'l Wildlife Fed.*, 861 F.2d at 1122; *Mead Data Cent.*, 566 F.2d at 256.

### 2. Health Effects of Perchlorate Contamination

■ In this category, NRDC challenges the withholding of three documents in particular, (*see* SGI ¶¶ 278–281), and the Court concludes that all factual material in these documents, OMB 2004–822, OMB 2003–3–1339 and EPA 1770 must be released to NRDC, along with the factual material in all other documents in the representative sample that they represent.

■ Document OMB 2004–822 is an e-mail that contains the sender's "impressions, in a summary, of a discussion of perchlorate health effects." (Schwab Decl., Ex. A [OMB *Vaughn* index] at 49). OMB's defense of the document—that "NRDC, again, presents no reason not to believe OMB's conclusion that the factual material within Ms. Beck's discussion was too intertwined with her deliberative impressions to be reasonably segregable," (Defs.' Reply at 9)—against misstates the burden on summary judgment. The Court understands that, under *Mapother*, summaries may be subject to protection under FOIA because they may reveal a decisionmaker's priorities. *Mapother*, 3 F.3d at 1539; *see also Quarles v. Dep't of the Navy*, 893 F.2d 390, 392 (D.C.Cir.1990) (collecting cases). But the specific background in *Mapother* is not comparable because the data summarized were in the public domain and the ultimate decisionmaker's culling of the summaries was also

public. *Id.* Leaving this factual difference aside, however, it is clear from the present record that OMB has not adequately justified the withholding of this factual material through the conclusory assertion cited above. Again, Defendants are reminded that they have been instructed to identify the *proportion of factual information that is contained in the portions withheld* in support of their position. *Mead Data Central*, 566 F.2d at 261; *Judicial Watch*, 297 F.Supp.2d at 271. Without such information, this Court concludes that OMB has failed to meet its burden with respect to this document.

Document OMB 2003–3–1339 is a one-line e-mail from the Administrator of OIRA "request[ing] certain information on a government review of perchlorate health effects." (Schwab Decl., Ex. A [OMB *Vaughn* index] at 88 (emphasis added)). The *Vaughn* index entry again states in a conclusory manner: "This one-line e-mail is being withheld in full. Any *factual information in the one-line* is so intertwined with the question posed that disclosure would reveal the comments and the specific considerations associated with the decision-making process of the executive branch." (Schwab Decl., Ex. A [OMB *Vaughn* index] at 89 (emphasis added)). Defendants have not provided any justification, however, for the assertion that it could cause administrative or other difficulty to segregate the facts from this one line. *See Mead Data Cent.*, 566 F.2d at 261 n. 55 (looking to the effort that would be required to segregate factual material). The Court is likewise unconvinced that release of a fact in a one-line e-mail requesting information could be read to reveal a decisionmaker's *priorities* and thereby infringe on the deliberative process privilege, even though such a situation could be present under other circum-

stances. *See, e.g., Mapother,* 3 F.3d at 1539; *Quarles,* 893 F.2d at 392.

Document EPA 1770 is a draft report entitled "Perchlorate Identification in Fertilizers and Accumulation in Lettuce Seedlings." (Second Farland Decl., Ex. A [EPA *Vaughn* index]). NRDC thinks this document will be useful in assessing perchlorate's effects on human health, but EPA claims that the draft report is entirely deliberative because it was under inter-agency and intra-agency review at the time it was created and "[f]actual information contained in the draft report reflects the ORD staff scientists' positions on what should be included in the report at that time and was not cleared by internal and interagency reviewers." (*Id.*). NRDC argues that the fact that the report was not finalized or that various agencies might have questioned the conclusions drawn in the report does not protect the disclosure of the factual data it contained. *See Burka v. U.S. Dep't of Health & Human Servs.,* 87 F.3d 508, 517 (D.C.Cir.1996); *Sw. Ctr. for Biological Diversity v. U.S. Dep't of Agric.,* 170 F.Supp.2d 931, 942–43 (D.Ariz.2000), *aff'd on other grounds,* 314 F.3d 1060 (9th Cir.2002).

In *Burka* and *Southwest Center,* the courts found that Exemption 5 did not apply to the confidential research data at issue there because research data was not normally protected in civil discovery, and the logic of *Burka* and *Southwest Center* applies here as well. Moreover, as the D.C. Circuit has observed, "[u]nevaluated factual reports ... are frequently used by decisionmakers in coming to a determination, and yet *it is beyond dispute that such documents would not be exempt from disclosure.*" *Vaughn,* 523 F.2d at 1143 (citing *Mink,* 410 U.S. at 87–88, 93 S.Ct. 827).

Likewise, again, in *Petroleum Info. Corp.,* the court noted that the government failed to "convincingly explain why its concerns ... could not be allayed by conspicuously warning FOIA requesters that the [draft document] is ... unofficial and that the [agency] disclaims responsibility for any errors or gaps." 976 F.2d at 1437. The *Petroleum Info. Corp.* court also noted that "[t]he release of materials that do not embody agency judgments—for example, materials relating to standard or routine *computations or measurements* over which the agency has no significant discretion—is unlikely to diminish officials' candor or otherwise injure the quality of agency decisions." *Id.* at 1436 (emphasis added); *see also Carter v. U.S. Department of Commerce, Washington D.C.,* 307 F.3d 1084, 1092 (9th Cir.2002) (quoting *Assembly of Cal.,* 968 F.2d at 923) ("Inaccuracy is not a basis for FOIA exemption.").

### 3. Methods and Costs of Remediating Perchlorate Contamination

 In this category, NRDC challenges the withholding of four documents, (*see* SGI ¶¶ 282–285), and the Court concludes that all factual material in these documents, DoD 350, DoD 1326, OMB P–96 and OMB P–649 must be released to NRDC, along with the factual material in all other documents in the representative sample that they represent.

Document DoD 350 is an e-mail string containing an attachment that "discusses and analyzes several possible technologies for perchlorate treatment that could be used in demonstration projects," (Fifth Aly Decl., Ex. A [DoD *Vaughn* index] at 28), and document DoD 1326 is a "draft memorandum concerning perchlorate treatment technologies for DoD facilities in California," (*id.* at 111). As to both documents, the *Vaughn* index indicates as to segregability simply that the documents contain only exempt information and that "[d]isclo-

sure of any portion of the document would reveal content of internal deliberations." (*Id.* at 28, 111).

Document OMB P–96 is an e-mail attachment that "outlines draft estimates for the cost of perchlorate cleanup in terms of both direct costs to DoD and costs to industry." (Schwab Decl., Ex. A [OMB *Vaughn* index] at 53). The segregability information is that "[t]he document is being withheld in full—two pages. Any factual information in these two pages is so intertwined with the estimates that disclosure would reveal those thoughts and the specific considerations associated with the decision-making process of the executive branch." (*Id.*). Document OMB P–649 is a 1.5–page document containing seven paragraphs and a small chart and including "a draft cost estimate and summary information regarding a component of perchlorate cleanup costs." (Schwab Decl., Ex. A [OMB *Vaughn* index] at 57). The segregability information is that "[t]he responsive portion [of the document]—seven paragraphs and a small cart—are being withheld in full. Any factual information in these seven paragraphs and chart are so intertwined with the draft that disclosure would reveal those thoughts and the specific considerations associated with the decision-making process of the executive branch." (*Id.*).

NRDC argues that the information in these four documents is purely factual and subject to disclosure, and DoD responds that because the analyses require individual judgment and the selection and analysis of facts, they are deliberative. For instance, Defendants argue that the draft cost estimates in OMB P–96 and OMB P–649 are "part and parcel of the agencies' consideration, and evaluation, of the merits of the several approaches [to perchlorate remediation] under consideration." (Defs.' Reply at 10) (citing *Nat'l Wildlife Fed'n,*

861 F.2d at 1121; *Quarles,* 893 F.2d at 392–93). Defendants argue that the act itself of considering these methods and computing these costs would reveal agency deliberations. (Defs.' Reply at 9–10, 19). The Court disagrees, and concludes that Defendants have not adequately justified the withholding of segregable factual material in these documents.

Defendants' submissions do not establish that the *data* here would "reveal the issues that the [Agency] considers important and provide telling clues as to the [Agency's] proposed course of action in addressing the conflicting demands on the [Agency's] resources." *Nat'l Wildlife Fed'n,* 861 F.2d at 1121. In the Ninth Circuit, such things as expert reports and analyses have been treated as "closer to fact [than to deliberations] and would not reveal the agency's protectable thought processes." *Assembly of Cal.,* 968 F.2d at 922 (computations of census figures); *Carter,* 307 F.3d at 1091 (same); *Petroleum Info. Corp.,* 976 F.2d at 1435 (acreage estimates). Although "[s]ome numbers, like the military cost estimates at issue in *Quarles,* may 'derive from a complex set of judgments' and 'partake of that elasticity that has persuaded courts to provide shelter for opinions generally,'" *Assembly of Cal.,* 968 F.2d at 922 (quoting *Quarles,* 893 F.2d at 392–93), Defendants' conclusory statement that this is the situation here fails to warrant withholding the factual data in these documents.

### 4. *Additional Factual Material Withheld by EPA*

 In an additional instance to the ones discussed above, EPA designates calculations themselves as deliberative. (*See* SGI ¶ 288). Document EPA 4590 is an e-mail string "discuss[ing] *chemical mechanisms* of perchlorate and the need to perform additional tests to assess perchlo-

rate." (Second Farland Decl., Ex. A [EPA *Vaughn* index] (emphasis added)). In justifying the application of the deliberative process privilege, the *Vaughn* index states that the e-mail text contains "*deliberative calculations* relating to pertinent chemical reactions for use in a perchlorate assessment." (*Id.* (emphasis added)). However, as the Court noted in May, conclusory assertions of the supposedly deliberative nature of facts *does not* meet Defendants' burden to justify their withholdings. *See, e.g., NRDC I,* 388 F.Supp.2d at 1106 (citing *Wilderness Soc'y,* 344 F.Supp.2d at 19).

EPA argues that NRDC is incorrect that EPA 4590 is purely factual. EPA claims that it has released some of the document's text that contains factual information, but the other factual information in the document is inextricably intertwined with the agency's deliberations. (*See* Defs.' Reply at 14). On this basis, EPA asserts that it has satisfied the requirements of showing that the document is subject to the deliberative process privilege and the withheld factual material is not reasonably segregable from the privileged deliberative material. However, such facts can be protected only if Defendants show that the disclosure of the specific facts would "enable the public to reconstruct . . . the protected deliberative process." *Assembly of Cal.,* 968 F.2d at 922. EPA has not made a sufficient showing that this is the case here.

### 5. Conclusion

 Holding the government to its burden of segregation is especially important when Exemption 5 is invoked, because the public has a vital interest in knowing the facts that are available to the agency. *Assembly of Cal.,* 968 F.2d at 921–22; *Nat'l Wildlife Fed'n,* 861 F.2d at 1117–20. Defendants have not adequately justified

their withholding of segregable factual material and should disclose the factual material referenced here and additional factual matter represented by these documents in the samples.

### E. THE ADEQUACY OF THE REPRESENTATIVE SAMPLE

 In its May Order, the Court stated that its ruling on the sample documents, at least with respect to EPA and DoD, would apply to all documents in the category the sample document represented. *NRDC I,* 388 F.Supp.2d at 1090–91, 1110. Although this ruling would not necessarily apply to documents for which exemption has been waived such as by disclosure to third parties, *see Mobil Oil Corp.,* 879 F.2d at 701, NRDC argues that this proper approach makes the representativeness of Defendants' samples especially important. In addition, NRDC notes that before filing the pending motions for summary judgment, "Defendants released in whole or in part a number of documents that had been selected for the representative samples." (Pl.'s Mot./Opp. at 26; SGI ¶ 290). NRDC argues that these releases call into question both the representative nature of the final sample provided to the Court and Defendants' continued withholding of similar, non-sampled documents.

It is not disputed that after the representative samples were chosen, OMB released approximately 18%, DoD released approximately 20%, and EPA released approximately 12% of the documents in those samples, either in whole or in part. It is also not disputed that Defendants filed sworn declarations and stipulations that all of these documents were exempt from disclosure under FOIA. (*See* Cohen Decl. ¶ 5 (DoD documents); Farland Decl. ¶ 31 (EPA documents); Stip. & Order Regarding Briefing Schedule with Respect to

OMB's Mot. for Summary Judgment, 4/15/05, at 1 (OMB documents)).

From these facts, the Court concludes that Defendants must supplement their *Vaughn* indices to include their justifications for originally withholding the documents that they have since that time released, since such releases artificially skew the propriety of the representative sample before the Court. *See Bonner v. Dep't of State*, 928 F.2d 1148, 1152–53 (D.C.Cir. 1991). Because a representative sample is picked to serve as the basis "to test an agency's FOIA exemption claims when a large number of documents are involved," *id.* at 1151 (citations omitted), courts have found that the subsequent release of representative documents, ***without a full explanation of the basis for their original withholding***, calls into question the representative nature of the final sample and can "undermine[ ] the confidence one can have that the [government] correctly invoked FOIA to shield information" contained in documents not included in the sample. *Id.* In *Bonner*, for instance, the court dealt with a situation where 19 documents from a 63–document sample selected by the parties—or 30.2%—were released. *Id.* The *Bonner* court determined that the agency had to "justify its initial withholdings [of all documents in the sample] ***and is not relieved of that burden by a later turnover of sample documents.***" *Id.* at 1154 (emphasis added).

Defendants argue that "[i]n a FOIA case such as this one in which the requester has asked for the production of a large volume of documents, it is inevitable that the agency, in responding to such a request, will make a small set of errors in processing the responsive documents for production or withholding, or that the agency will re-evaluate some of its withholdings as the case progresses." (Defs.' Reply at 11). Defendants point out

that it is understood that "[p]erfection ... is not the standard" in assessing agency responses to FOIA requests. *Rothschild v. Dep't of Energy*, 6 F.Supp.2d 38, 40 (D.D.C.1998). However, the statement in *Rothschild* was made in a situation where the plaintiff "identified ***at most two responsive documents which may be in DOE's possession*** but were neither turned over to him nor listed in the Vaughn index." *Id.* (emphasis added). Although the presumption of good faith of agency declarations cannot be rebutted by " 'purely speculative claims about the existence and discoverability of other documents,' " *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C.Cir.1991) (citation omitted), agencies may not use this presumption to avoid their obligations of presenting ***specific and thorough justifications for their withholdings, including for documents that are subsequently released as described in Bonner.***

Defendants also argue that courts would create a perverse incentive for an agency to be "recalcitrant in its withholdings" if it could be penalized for making these re-evaluations. (Defs.' Reply at 11); *see. e.g., Public Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C.Cir.2002); *see also Assembly of Cal.*, 968 F.2d at 923 n. 5. Although " 'to effectively penalize an agency for voluntarily declassifying documents would work mischief by creating an incentive against disclosure,' " *Public Citizen*, 276 F.3d at 645, the Court at the same time is bound by the principle articulated in *Bonner* that an agency must justify its releases in order for a representative sample to be truly representative. This practice does not "penalize an agency" for voluntary declassification, but rather ensures the adequacy and reliability of the sampling procedure and the agency's withholdings.

NRDC acknowledges that Defendants can release documents from the representative samples at any time, *see, e.g., NRDC I*, 388 F.Supp.2d at 1109–10, but denies that Defendants can at the same time argue that the present samples and related *Vaughn* indices—which do not provide information regarding Defendants' justifications for the original withholdings of the released documents—are representative of all of their withholdings in the case. (Pl.'s Reply at 17); *see Bonner*, 928 F.2d at 1151. In addition, the 25% number in *Meeropol*, which provides guidance in determining whether error rates are "unacceptably high," *see, e.g., Meeropol*, 790 F.2d at 948, 960, is not a defined cut-off. Instead, the assessment of the agency's position depends on considerations specific to each case, which assessment cannot be made without information about the agencies' original justifications for withholding requested documents. *See Bonner*, 928 F.2d at 1152, 1154.

For these reasons, the Court concludes that NRDC is entitled to Defendants' specific justifications for their original withholdings in order to assess Defendants' conduct or motives in withholding documents. If the exemptions claims for many of the documents voluntarily released from the representative samples "do not survive inspection," the Court will need to further examine "the propriety of withholding other responsive, but non-sample, documents." *See Bonner*, 928 F.2d at 1154.

## IV.

## CONCLUSION

As set forth above, Defendants' motions for summary judgement and Plaintiff's cross-motion for summary judgment are **GRANTED IN PART** and **DENIED IN PART**.[5]

OMB's motion for summary judgment is **DENIED** as to: (1) the "leaked" documents; (2) documents shared with outside parties including alleged contractors such as Belzer; (3) the specified segregable factual material; and (4) the representativeness of the sample, but is **GRANTED** in other respects as set forth in the introduction.

DoD's motion for summary judgment is **DENIED** as to: (1) documents shared with outside parties including alleged contractors such as Belzer; (2) documents for which DoD fails to identify the author or recipient; (3) the specified segregable factual material; and (4) the representativeness of the sample, but is **GRANTED** in other respects as set forth in the introduction. The Court notes that DoD states that it is voluntarily reviewing its withheld documents to locate and release documents that were shared with persons outside the Government or that consist wholly of factual information. (Defs.' Reply at 20; SSUF ¶ 319).

EPA's motion for summary judgment is **DENIED** as to: (1) segregable factual material such as regarding health effects of perchlorate contamination and "deliberative calculations;" and (2) the representativeness of the sample, but is **GRANTED** in other respects as set forth in the introduction.

Plaintiff's cross-motion for summary judgment is **GRANTED** as set forth herein. The Court has found that Defendants continue to withhold segregable factual material and documents without demon-

5. On January 23, 2006, Defendants filed a motion to strike the Fifth Declaration of Aaron Colangelo and Attachment A to the Fourth Declaration of Aaron Colangelo. In reaching its conclusions, the Court does not rely on these documents. Therefore, Defendants' motion to strike is **MOOT**.

strating that they are subject to an exemption, and that Defendants must provide information on the documents that it has voluntarily disclosed to NRDC from the representative samples. After that information is received and responded to, the Court will determine whether or not to assign the case to a magistrate judge, special master, or other third party to review the withheld documents in more detail. *See* 5 U.S.C. § 552(a)(4)(B); *Fiduccia*, 185 F.3d at 1042–43.

IT IS SO ORDERED.